OPINION
{¶ 1} Appellant/cross-appellee, Michael P. Stanich, appeals the judgment entry of the Mahoning County Court of Common Pleas affirming the decision of appellee/cross-appellant, the Ohio Insurance Guaranty Association ("OIGA").[1]
 {¶ 2} On January 17, 1997, appellant was sued for medical malpractice. Appellant was insured by PIE Mutual Insurance Company ("PIE"). PIE had issued appellant two policies of insurance on August 8, 1996, insuring appellant against claims for medical professional liability. Both the primary and excess policies were for $1,000,000. PIE originally defended appellant in his medical malpractice lawsuit, but PIE was later declared insolvent and liquidated. OIGA is a company that was formed to pay covered claims under insolvent insurers' contracts. Hence, when PIE became insolvent, OIGA assumed the obligation of defending appellant pursuant to R.C. 3955.01, et seq.
 {¶ 3} On August 7, 2000, appellant filed a complaint for declaratory judgment against OIGA, Ronald Morgan individually and as administrator of the estate of Leigh Morgan ("the deceased"), John Delliquadri, D.O. ("Delliquadri"), and James Essad, D.O. ("Essad"). In that complaint, appellant's prayer for relief was for the court to determine his right to coverage by OIGA and declare the maximum amount of coverage that OIGA must provide for his benefit pursuant to the laws of Ohio and the provisions of the insurance contracts with PIE. Appellant contends that OIGA must insure him for up to $300,000 on each covered claim.
 {¶ 4} On August 24, 2000, OIGA filed an answer admitting that appellant was insured by PIE and denying that he was covered by two separate insurance contracts. OIGA averred that one policy provided primary coverage, and the other one provided excess coverage. Thus, the two policies were contingent upon each other and could not be considered separate.[2]
 {¶ 5} On November 2, 2000, appellant filed a motion for summary judgment, and on November 16, 2000, OIGA filed a motion for summary judgment with a reply to appellant's motion. On May 4, 2001, the trial court denied appellant's motion for summary judgment and stated that "OIGA [was] entitled to a finding that [appellant] ha[d] a single claim against OIGA for a maximum payment by OIGA of $300,000 under the PIE Policies (in the event of judgment in that amount or more)." Thereafter, on May 11, 2001, the trial court concluded that since it had denied appellant's motion and entered a judgment that adjudicated his claims, "there [was] no just reason for delay and [appellant's] action is dismissed." On May 24, 2001, appellant filed an appeal from both the May 4 and May 11 orders and now advances a single assignment error:
 {¶ 6} "The Court of Common Pleas erred in denying [appellant's] motion for [s]ummary [j]udgment and in finding in favor of [OIGA] and in dismissing [a]ppellant's [c]omplaint for [d]eclaratory [j]udgment."
 {¶ 7} In response, OIGA filed a cross-appeal, and makes the following assignment of error:
 {¶ 8} "The trial court erred as a matter of law when it failed to find that appellant has no viable claim against [OIGA] until all recoverable insurance applicable to the loss has been exhausted."
 {¶ 9} We note that this case was remanded to the trial court. On December 12, 2001, this court determined that the matter was not ripe for determination. Thereafter, on January 10, 2002, the trial court issued a judgment entry in which it indicated that "all other applicable insurance coverage available from all solvent insurance companies insuring the parties in the matter must be exhausted before [OIGA] or [appellant] shall have any liability." This court also remanded the matter to the trial court because the trial court's May 4 and May 11 entries did not dispose of OIGA's motion for summary judgment. Subsequently, in its June 11, 2002 entry, the trial court explained that its May 4 order was "intended to be dispositive of [OIGA's] Motion for Summary Judgment." Therefore, the trial court sustained OIGA's motion.
 {¶ 10} Under his sole assignment of error, appellant poses two issues. First, appellant asks whether the survival action and five wrongful death claims arising from the death of Leigh Morgan were within the coverage of PIE's primary and excess policies of insurance. Second, appellant questions whether, pursuant to R.C. 3955.01 and R.C. 3955.08, OIGA was required to insure appellant for $300,000 for each covered claim under each policy with a maximum limit on each policy of $1,000,000.
 {¶ 11} Summary judgment may be granted where there are no genuine issues as to any material fact, the moving party is entitled to judgment as a matter of law, and it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. Mootispawv. Eckstein (1996), 76 Ohio St.3d 383, 385.
 {¶ 12} The Supreme Court stated in Dresher v. Burt (1996),75 Ohio St.3d 280, 296:
 {¶ 13} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. The `portions of the record' to which we refer are those evidentiary materials listed in Civ.R. 56(C), such as the pleadings, depositions, answers to interrogatories, etc., that have been filed in the case. * * *" (Emphasis sic.)
 {¶ 14} Appellate courts review a trial court's granting of summary judgment de novo. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711. The Brown court stated that "* * * we review the judgment independently and without deference to the trial court's determination." Id. An appellate court must evaluate the record "in a light most favorable to the nonmoving party." Link v. Leadworks Corp.
(1992), 79 Ohio App.3d 735, 741. Furthermore, a motion for summary judgment must be overruled if reasonable minds could find for the party opposing the motion. Id.
 {¶ 15} The purpose of R.C. 3955.01, et seq. is set forth in R.C.3955.03 as follows:
 {¶ 16} "* * * [T]o provide a mechanism for the payment of covered claims under certain insurance policies, avoid excessive delay in payment and reduce financial loss to claimants or policyholders because of the insolvency of an insurer, assist in the detection and prevention of insurer insolvencies, and provide an association to assess the cost of such protection among insurers."
 {¶ 17} The Act provides that, when an insurer is deemed insolvent, "[OIGA] steps into the shoes of that insurer, assuming all of the carrier's obligations to insureds and third-party claimants. R.C.3955.08(A)(2) and (4)." Lake Hosp. Sys., Inc. v. Ohio Ins. Guar. Assn.
(1994), 69 Ohio St.3d 521, 523; PIE Mut. Ins. Co. v. Ohio Ins. Guar.Assn. (1993), 66 Ohio St.3d 209, paragraph one of the syllabus. The Act vests OIGA with the responsibility of providing insurance coverage when no other insurance is available to compensate valid claims. R.C.3955.13(A). However, not all claims covered by the policy are payable by OIGA. Lake Hosp., supra.
 {¶ 18} In the case at bar, the primary policy under which appellant was insured for malpractice expressly provided that "[t]he Limit of Liability stated in the General Declarations, as applicable to `each claim,' is the limit of The Company's liability for all damages because of any one claim or suit or all claims or suits first made during the Policy period because of injury to or death of any one person."
 {¶ 19} Based on the foregoing provision, if PIE had not become insolvent and appellant had sought coverage under the insurance policy, he would have had one claim subject to a single claim of liability. Hence, since OIGA stands in place of the insolvent PIE, appellant has one covered claim.
 {¶ 20} The General Declarations page of the policy provides that the limits of liability are $1 million for each claim and $3 million in the aggregate. Therefore, based on the terms of the policy, the $1 million coverage is applicable to "each claim" which "is the limit of [t]he [c]ompany's liability for all damages because of any one claim or suit or all claims or suits * * * because of injury to or death of any one person." However, it is our view that the intent of the policy was to limit exposure to all claims or suits arising out of the treatment of one person.
 {¶ 21} Here, appellant argues that, since the coverage was divided between two policies, the primary and excess, rather than contained in one policy, the medical malpractice claim actually asserted two claims against appellant. Thus, he posits that he has two claims against OIGA and should be entitled to recover twice the statutory limit. However, the deceased filed one malpractice action involving appellant, who was one physician insured by PIE. It is our position that even though PIE divided the coverage for a single malpractice claim into two policies, the deceased's claim was not transformed into two claims against appellant.
 {¶ 22} A "covered claim" is defined in R.C. 3955.01(D)(1) as follows:
 {¶ 23} "* * * an unpaid claim, including one for unearned premiums, which arises out of and is within the coverage of an insurance policy to which sections 3955.01 to 3955.19 of the Revised Code apply, when issued by an insurer which becomes an insolvent insurer on or after September 4, 1970, and either of the following applies:
 {¶ 24} "(a) The claimant or insured is a resident of this state at the time of the insured event, provided that for the purpose of determining the place of residence of a claimant or insured that is an entity other than a natural person, the state in which its principal place of business is located at the time of the insured event shall be considered the residence of such claimant or insured.
 {¶ 25} "(b) The claim is a first-party claim for property damage to an insured's property that is permanently located in this state."
 {¶ 26} R.C. 3955.01(D)(2)(b) provides that a "covered claim" does not include any amount in excess of $300,000 on any claim. The claimant must first exhaust all possible recovery rights against insolvent insurers. R.C. 3955.13(A).
 {¶ 27} The primary and excess policies at issue define "claim" in the same language, as "* * * a notification to an Insured by a third party or by means of a civil proceeding, alleging injury to which this Policy coverage applies and which is reported in writing to The Company during the Policy period."
 {¶ 28} Hence, the malpractice action brought by the administrator of the estate of the deceased, Leigh Morgan, presented a survival claim for the benefit of her estate and wrongful death claims in behalf of five separate beneficiaries. It asserted only a single claim for injury as defined under the policy.
 {¶ 29} Appellant also contends that Rushdan v. Baringer (Sept. 10, 2001), 8th Dist. No. 78478, 2001 WL 1002255, supports his argument. In Rushdan, the appellee filed an action for medical malpractice against the appellant, who was insured by PIE, which provided coverage in the amounts of $1 million per claim/$3 million in the aggregate under a primary policy of insurance and $1 million under an excess policy. After PIE was declared insolvent and ordered into liquidation, the appellee assumed the defense of the claims against the appellant. A partial settlement of the claims was reached and the total value of OIGA's claims against the appellant was stipulated at $1.3 million. The appellee accepted OIGA's offer of $300,000 plus a Class 2 claim in the amount of $1 million. The appellee argued that she had a second covered claim pursuant to the excess policy and was entitled to a second payment of $300,000 from OIGA. The Eighth District Court of Appeals held that, by limiting a covered claim to one that arises under an insurance policy, the General Assembly intended coverage under one policy of insurance. The court continued:
 {¶ 30} "* * * Consequently, if the insured had coverage under more than one policy and had that coverage been triggered under the terms of those policies so as to compensate the injured plaintiff according to the terms of a judgment or settlement, then it follows that the same plaintiff has a covered claim under each policy. * * *" (Emphasis added.) Id. at 3.
 {¶ 31} The court further explained that the General Assembly did not limit coverage to one set of circumstances or one particular event. Id. At first glance, these findings would seem to support appellant's position; however, Rushdan is distinguishable from this case because inRushdan, the stipulated value of the case exceeded the limits of the primary policy and, thus, the excess policy would have provided coverage but for PIE's insolvency. There was no similar stipulation, settlement, or judgment in the case at hand. Hence, the excess policy would not have been required to provide coverage if PIE had not been insolvent and appellant was limited to one claim against OIGA. The court in Rushdan
recognized this distinction and stated:
 {¶ 32} "* * * Had the reasonable settlement value been less than $1 million, coverage under the excess policy would never have been available. Nor could the excess policy serve to "drop down" to provide coverage if the reasonable settlement value had been more than $300,000 but less than $1 million. See Wurth v. Ideal Mut. Ins. Co. [1987], 34 Ohio App.3d [325,] 328. In such a case, OIGA's liability would have been statutorily limited to $300,000.00."
 {¶ 33} In the case at bar, since the parties have not stipulated that the settlement value of the case is in excess of appellant's primary PIE policy, it is our view that appellant's request for coverage under the excess policy be denied. Further, it is also our determination that the multiple wrongful death beneficiaries could only assert one covered claim against OIGA following the insolvency of PIE.
 {¶ 34} For the foregoing reasons, appellant's assignment of error is not well-taken. Therefore, the trial court did not err in granting OIGA's motion for summary judgment and denying appellant's motion for summary judgment.
 {¶ 35} Turning to the cross-appeal, OIGA contends that R.C.3955.13(A) mandates that all recoverable insurance applicable to the malpractice action be exhausted before it contributes to a settlement on behalf of appellant's insolvent insurer and that the trial court erred in failing to make a finding applying the requirements of R.C. 3955.13(A) to the instant matter.
 {¶ 36} As noted previously, we remanded this matter to the trial court on December 12, 2001. Subsequent to that remand, the trial court filed its January 12, 2002 judgment entry, in which it stated:
 {¶ 37} "[R.C. 3955.13(A)] requires that all other available insurance be exhausted before [OIGA] has any duty to pay covered claims in connection with the insolvency of an insurance company. In the present case, [appellant] was formerly insured by [PIE] until it became insolvent. Additionally, there are other parties that are insured by solvent insurance companies. Accordingly, all other applicable insurance coverage available from all solvent insurance companies insuring the parties in [the matter sub judice] must be exhausted before [OIGA] or [appellant] shall have any liability."
 {¶ 38} Because the trial court's judgment entry directly addresses the issue raised by OIGA in its cross-appeal, the issue is now moot, and we will not address the merits of OIGA's argument.
 {¶ 39} For the foregoing reasons the judgment of Mahoning County Court of Common Pleas is affirmed.
Christley, J., concurs.
Waite, J., concurs.
[1] For purposes of this opinion, appellant/cross-appellee will be referred to as appellant, and appellee/cross-appellant will be referred to as OIGA.
[2] We note that Essad filed a separate answer to the complaint on September 7, 2000. On October 3, 2000, Ronald Morgan filed his answer to the complaint.