OPINION
{¶ 1} Appellant, Jean Esposito, appeals from the June 10, 2002 judgment entry of the Lake County Court of Common Pleas, granting the motion for summary judgment of appellee, Fernando Caputo, d.b.a. Caputo Construction.
 {¶ 2} On July 24, 2001, appellant filed a complaint. Appellee filed an answer on September 25, 2001. On January 18, 2002, appellee filed a motion for summary judgment. Appellant replied to the motion for summary judgment on February 15, 2002.
 {¶ 3} The facts of the case are as follows: appellant first saw a new home under construction by appellee around May or June 1993. Appellant and appellee entered into a real estate purchase agreement on May 28, 1993. On July 21, 1993, appellant and her cousin and co-owner, Anne Mioli ("Mioli"), purchased a home for $92,000 from appellee located at 169 Admiral Drive, Eastlake, Ohio, 44095. Although Mioli is identified on the title of the home, she is not named as a party to this action.
 {¶ 4} Appellant identified a number of perceived problems and reported them to appellee, who failed to comply to appellant's satisfaction. The various problems included: a separation from the ceiling and walls, "hair line" cracks in the foundation, gaps between the outer walls of the home and the foundation, improper installation and discoloration of the flooring, and "wavy" siding on the east side of the house.
 {¶ 5} Appellant retained Jagger Enterprises, Inc. d.b.a. Buckeye Home Inspections, and Jim Jagger ("Jagger"), president, inspected the home on January 25, 1995. Appellant and her attorney, Michael Silver, were present at the time of the inspection. Jagger observed miscellaneous cracking at several inside drywall corners and at numerous ceiling to wall intersections. Drywall tape was pulled loose at various locations. Jagger ascribed these problems to be the result of "expected post-construction shrinkage and settling" of the home. Jagger also stated that it was common practice for a builder of a new residence to return and caulk inside drywall seams. Jagger noted that the master bath, kitchen, and laundry room floor coverings were installed in a "substandard manner" and that "defective workmanship [was] clearly visible." Distorted and warped vinyl siding was also noted as evidence of "substandard workmanship."
 {¶ 6} Appellant contacted appellee to repair all of the problems. Because appellee failed to provide the repairs described in Jagger's report, appellant filed suit in the Willoughby Municipal Court on June 26, 1995. The complaint alleged poor workmanship in the construction of the home and breach of contract and warranties. The case was settled, however, in April 1996.
 {¶ 7} After the resolution of the 1995 litigation, appellant perceived additional problems with the home, namely a "rippling" in the vinyl siding and larger cracks in the foundation. Appellee failed to fix the problems. Appellant hired RB Siding ("RB") on August 22, 1996, who determined that the problem "may be due to either improper installation of siding or the warping of the underlying sheeting board." Appellant testified that CEI power washed her home, and as a result, a pipe was cracked which resulted in a flood in August 2000.
 {¶ 8} Appellant hired Triggs Technologies, Inc. ("Triggs") who determined on March 23, 2001, that gaps between one-half inch to approximately one inch in width had opened up between the floor slab and the exterior walls. According to Triggs, this was "evidence of an on-going structural problem of the east, north, and south exterior walls moving slowly but steadily away from the house." Triggs concluded that "if the house had been constructed with its walls being capable to function as retaining walls, the reported problems would not have occurred."
 {¶ 9} The trial court granted appellee's motion for summary judgment on June 10, 2002. It is from that entry that appellant filed a timely notice of appeal on July 3, 2002, and makes the following assignments of error:
 {¶ 10} "[1.] The trial court erred in granting appellee's motion for summary judgment on the basis that appellant's claim was untimely.
 {¶ 11} "[2.] The trial court erred in granting appellee's motion for summary judgment on the basis that appellant's claim was barred by res judicata.
 {¶ 12} "[3.] The trial court erred in granting appellee's motion for summary judgment on the basis that no genuine issues of material fact existed as to [appellee's] negligence."
 {¶ 13} In her first assignment of error, appellant argues that the trial court erred in granting appellee's motion for summary judgment on the basis that her claim was barred by the statute of limitations.
 {¶ 14} In order for a summary judgment to be granted, the moving party must prove: "*** (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made."Mootispaw v. Eckstein (1996), 76 Ohio St.3d 383, 385.
 {¶ 15} The Supreme Court stated in Dresher v. Burt (1996),75 Ohio St.3d 280, 296, that: "***the moving party bears the initial responsibility of informing the trial court of the basis for the motion,and identifying those portions of the record which demonstrate theabsence of a genuine issue of fact on a material element of the nonmovingparty's claim. The `portions of the record' to which we refer are those evidentiary materials listed in Civ.R. 56(C), such as the pleadings, depositions, answers to interrogatories, etc., that have been filed in the case. ***" (Emphasis sic.)
 {¶ 16} If the moving party satisfies this burden, then the nonmoving party has the burden pursuant to Civ.R. 56(E) to provide evidence demonstrating a genuine issue of material fact. If the nonmoving party does not satisfy this burden, then summary judgment is appropriate. Civ.R. 56(E). Appellate courts review a trial court's granting of summary judgment de novo. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711. The Brown court stated that "we review the judgment independently and without deference to the trial court's determination." Id. An appellate court must evaluate the record "in a light most favorable to the nonmoving party." Link v. Leadworks Corp.
(1992), 79 Ohio App.3d 735, 741. Furthermore, a motion for summary judgment must be overruled if reasonable minds could find for the party opposing the motion. Id.
 {¶ 17} "Generally, in determining the applicable statute of limitations, courts must look to the type of injury claimed and not to the form of the cause of action asserted." Portale v. BerkshireCondominium Owners Assoc., (Oct. 13, 1994), 8th Dist. No. 66793, 1994 Ohio App. LEXIS 4635, at 7-8. "An action by a vendee against the builder-vendor of a completed residence for damages proximately caused by failure to construct in a workmanlike manner using ordinary care, a dutyimposed by law, is an action in tort to which the four-year statute of limitations set forth in R.C. 2305.09(D) is applicable." (Emphasis sic.) Id. at 8-9.
 {¶ 18} R.C. 2305.09 provides that:
 {¶ 19} "An action for any of the following causes shall be brought within four years after the cause thereof accrued:
 {¶ 20} "***
 {¶ 21} "(D) For an injury to the rights of the plaintiff not arising on contract nor enumerated in sections 2305.10 to 2305.12, 2305.14
and 1304.35 of the Revised Code."
 {¶ 22} Thus, negligence claims alleging damage to real property are subject to a four-year limitations period under R.C. 2305.09(D).
 {¶ 23} The discovery rule states that "[a] negligence action against a developer-vendor of real property for damage to the property accrues and the four-year statute of limitations of R.C. 2305.09(D) commences to run when it is first discovered, or through the exercise of reasonable diligence it should have been discovered, that there is damage to the property." Harris v. Liston (1999), 86 Ohio St.3d 203, 207.
 {¶ 24} In the case at bar, certain problems occurred within a few weeks after appellant moved into the home, sometime in 1993. On January 25, 1995, appellant accompanied her expert, Jagger, in an inspection of the home. Jagger advised appellant in his report, on January 31, 1995, that "latent or concealed deficiencies may exist" and that "defective workmanship is clearly visible." Thus, appellant discovered, or through the exercise of reasonable diligence, should have discovered that there was structural damage to her home either in 1993, or in January 1995.
 {¶ 25} Appellant filed suit on June 26, 1995, alleging poor workmanship in the construction of the home and breach of contract and warranties. The filing of this complaint further showed that on June 1995, appellant knew that there was damage to her home. This case, however, was settled in April 1996.
 {¶ 26} Because problems ensued again after the settling of the 1995 cause of action against appellee, appellant hired RB on August 22, 1996, to inspect the siding on her home. RB determined that the problem "may be due to either improper installation of siding or the warping of the underlying sheeting board." Thus, this also shows that on August 22, 1996, appellant knew or should have known that there was other damage to her home which may not have been previously resolved.
 {¶ 27} Appellant's current suit in this matter was not filed until July 24, 2001, almost five years after the RB report of August 22, 1996. Thus, all of the dates identified, namely when appellant moved into the home in 1993, the Jagger report on January 31, 1995, and RB's determination of damage on August 22, 1996, occur outside of the four-year statute of limitations set forth in R.C. 2305.09(D). Appellant's argument that she did not learn of the damage to her home until 2000, and on March 23, 2001, when Triggs determined that there was structural damage, is clearly without merit. Appellant discovered, or "through the exercise of reasonable diligence" should have discovered that there may have been other damage to her home by August 22, 1996, when RB inspected the home and made its findings. Therefore, appellant's first assignment of error is without merit.
 {¶ 28} In her second assignment of error, appellant argues that the trial court erred in granting appellee's motion for summary judgment on the basis that appellant's claim was barred by res judicata.
 {¶ 29} As previously mentioned, appellant filed a two-count complaint in the Willoughby Municipal Court against appellee on June 26, 1995. Count one alleged negligent workmanship on the part of appellee in the construction of appellant's home. Count two alleged violations of the Ohio Consumer Sales Practice Act. The case was settled and dismissed in April 1996. Appellant filed suit again on July 24, 2001. Other than the elimination of count two from the 1995 complaint, the complaint filed in this matter is identical.
 {¶ 30} Theories of res judicata are used to prevent relitigation of issues already decided by a court or matters that should have been brought as part of a previous action. "[A] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claims arising out of the transaction or occurrence that was the subject matter of the previous action." Grava v. Parkman Twp. (1995), 73 Ohio St.3d 379, 382. Res judicata "applies to extinguish a claim by the plaintiff against the defendant even though plaintiff is prepared in the second action (1) [t]opresent evidence or theories of the case not presented in the firstaction, or (2) [t]o seek remedies or forms of relief not demanded in thefirst action." (Emphasis sic.) Id. at 383.
 {¶ 31} In the instant matter, appellant knew or should have known of the structural problems with her home as early as one year after she moved into the home in 1993. Appellant brought suit alleging negligent workmanship on June 26, 1995, which was settled and dismissed, and again filed a complaint on July 24, 2001. Because this claim is barred by the doctrine of res judicata, appellee was properly granted summary judgment. Thus, appellant's second assignment of error is without merit.
 {¶ 32} In her third assignment of error, appellant argues that the trial court erred in granting appellee's motion for summary judgment on the basis that no genuine issues of material fact existed as to appellee's negligence.
 {¶ 33} Based on our resolution of the first and second assignments of error, there would appear to be no need to address this assignment. Nevertheless, in the interest of justice, we will render a brief merit analysis.
 {¶ 34} Appellant can point to no evidence of a breach of ordinary care in the contracting and construction of the home other than to suggest appellee should not have built the house in the area due to soil conditions or should have built the foundation in a manner other than that reviewed, inspected, and approved by the city of Eastlake. SeeMullen v. Byers (Sept. 28, 2001), 11th Dist. No. 2000-T-0066, 2001 Ohio App. LEXIS 4414. Thus, appellant has failed to show a material fact at issue that appellee was negligent and breached its standard of care. Therefore, appellant's third assignment of error is without merit.
 {¶ 35} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Lake County Court of Common Pleas is affirmed.