OPINION
{¶ 1} Appellants, Rachael A. Cogswell and Jill Cogswell, appeal from the April 10, 2003 judgment entry of the Geauga County Court of Common Pleas, granting appellees', Beech Brook's and Halford and Billie Elston's ("the Elstons"), motions for summary judgment, and denying appellants' motion to amend their complaint.
 {¶ 2} On February 14, 2002, appellants filed a complaint against appellees, alleging negligence and/or willful, wanton and/or reckless misconduct which caused personal injuries to appellant Rachael Cogswell and setting forth claims of infliction of emotional distress and loss of service by her mother, appellant Jill Cogswell, arising out of a robbery and shooting which occurred on February 18, 2000.[1] The Elstons filed an answer on February 26, 2002. Beech Brook filed an answer on February 28, 2002.
 {¶ 3} The Elstons filed a motion for summary judgment pursuant to Civ.R. 56(C) on July 24, 2002. Beech Brook filed a motion for summary judgment on August 12, 2002. Appellants filed a brief in opposition to the Elston's motion for summary judgment on October 7, 2002. On November 25, 2002, appellants filed a brief in opposition to Beech Brook's motion for summary judgment as well as a motion to amend their complaint.
 {¶ 4} On December 6, 2002, Beech Brook filed a combined reply in support of its motion for summary judgment and brief in opposition to appellants' motion to amend their complaint. Also, on December 6, 2002, the Elstons filed a reply to appellants' brief in opposition to their motion for summary judgment.
 {¶ 5} The facts emanating from the record are as follows: Marcus Moorer ("Moorer") was a resident at Beech Brook from 1995 to 1998.[2] Moorer was placed, in 1998, with the Elstons, a married couple who have provided therapeutic foster care to troubled teenage boys for more than twenty years. Moorer had a treatment plan which included therapy sessions at Beech Brook. According to the Elstons, they provided Moorer with clear household rules and consequences for breaking those rules. The Elstons stated that they conducted unannounced searches of Moorer's belongings, monitored his interaction with friends, and counseled him against joining gangs, breaking the law, and using drugs. Although the Elstons were aware of Moorer's delinquent behavior, they indicated that he did not exhibit any violent behaviors. The Elstons as well as counselors and caseworkers from both Beech Brook and CCDCFS saw significant improvement and success in Moorer as a result of his therapy. Moorer testified that he formed a close bond with the Elstons.
 {¶ 6} On the morning of February 18, 2000, Moorer stated that he received a phone call from Wesley Pearson ("Pearson"), a former foster child of the Elstons. According to Moorer, the Elstons did not want him to socialize with Pearson because of Pearson's violent and delinquent background. Moorer told the Elstons that he and Jill Holder ("Holder"), one of Pearson's girlfriends, were going to the mall, out to eat, and then to the movies. The Elstons permitted Moorer to go with Holder to celebrate his fifteenth birthday.
 {¶ 7} Pearson and Holder picked up Moorer around 10:30 a.m. On the way to the mall, Moorer stated that Holder was shown a gun.[3] After leaving the mall, Moorer said that they went to a park and smoked marijuana. According to Moorer, Pearson came up with the idea to rob a gas station. At approximately 11:00 p.m., Pearson, Holder, and Moorer arrived at the Clark Gas Station on Mayfield Road in Geauga County, Ohio. Moorer shot and injured appellant Rachael Cogswell as well as fatally shot Danielle Kovacic ("Kovacic"), a store employee.[4]
 {¶ 8} Pursuant to its April 10, 2003 judgment entry, the trial court granted appellees' motions for summary judgment, and denied appellants' motion to amend their complaint. It is from that judgment that appellants filed a timely notice of appeal and make the following assignments of error:
 {¶ 9} "[1.] The trial court committed prejudicial error by declaring that [Beech Brook] is a `mental health organization' pursuant to R.C. 2305.51(A)(1)(c) and thereby immune from liability pursuant to R.C. 2305.51(B) inasmuch as Beech Brook is a private, `multi-service' organization, not solely a mental health organization, which provided in this case adoption and foster care services which fell outside the narrow statutory definition of `mental health service' set forth in R.C. 2305.51.
 {¶ 10} "[2.] The trial court committed prejudicial error by granting [Beech Brook's] motion for summary judgment pursuant to R.C. 2305.51(B) as [appellants] presented evidentiary materials, specifically the expert report of Bruce Maag, which establish genuine issues of material fact as to the negligent administration of Beech Brook's treatment foster care program separate and apart from any mental health care services.
 {¶ 11} "[3.] The trial court committed prejudicial error by granting [the Elstons'] motion for summary judgment, as well as such motion of [Beech Brook], as the evidentiary materials presented by [appellants] establish genuine issues of material fact as to the existence of a special relation between a foster care agency, foster parents, and the foster child which imposes a legal duty upon [appellees] to control the conduct of the foster child to prevent harm to a third party. Proximate cause of harm for any breach of such duty presented a jury issue, as did the issues of foreseeability and intervening cause."
 {¶ 12} In their first assignment of error, appellants argue that the trial court erred by declaring that Beech Brook is a mental health organization pursuant to R.C. 2305.51(A)(1)(c) and thereby immune from liability pursuant to R.C. 2305.51(B). Appellants allege that Beech Brook is a private, multi-service foster care organization. Appellants stress that R.C. 2305.51 is not applicable to the allegations of negligence complained of here.
 {¶ 13} R.C. 2305.51 set forth: "Immunity of mental health professional or organization as to violent behavior by client or patient
 {¶ 14} "(A)(1) As used in this section:
 {¶ 15} "* * *
 {¶ 16} "(c) `Mental health organization' means an organization that engages one or more mental health professionals to provide mental health services to one or more mental health clients or patients.
 {¶ 17} "(d) `Mental health professional' means an individual who is licensed, certified, or registered * * * to provide mental health services for compensation, remuneration, or other personal gain.
 {¶ 18} "(e) `Mental health service' means a service provided to an individual or group of individuals involving the application of medical, psychiatric, psychological, counseling, social work, or nursing principles or procedures to either of the following:
 {¶ 19} "(i) The assessment, diagnosis, prevention, treatment, or amelioration of mental, emotional, psychiatric, psychological, or psychosocial disorders or diseases * * *;
 {¶ 20} "(ii) The assessment or improvement of mental, emotional, psychiatric, psychological, or psychosocial adjustment or functioning, regardless of whether there is a diagnosable, pre-existing disorder or disease.
 {¶ 21} "(B) A mental health professional or mental health organization may be held liable in damages in a civil action * * * for serious physical harm or death resulting from failing to predict, warn of, or take precautions to provide protection from the violent behavior of a mental health client or patient, only if the client or patient or a knowledgeable person has communicated to the professional or organization an explicit threat of inflicting imminent and serious physical harm to or causing the death of one or more clearly identifiable potential victims, the professional or organization has reason to believe that the client or patient has the intent and ability to carry out the threat, and the professional or organization fails to take one or more of the following actions in a timely manner:
 {¶ 22} "(1) Exercise any authority the professional or organization possesses to hospitalize the client or patient on an emergency basis * * *;
 {¶ 23} "(2) Exercise any authority the professional or organization possesses to have the client or patient involuntarily or voluntarily hospitalized * * *;
 {¶ 24} "(3) Establish and undertake a documented treatment plan * * *;
 {¶ 25} "(4) Communicate to a law enforcement agency * * * and if feasible, communicate to each potential victim or a potential victim's parent or guardian if the potential victim is a minor or has been adjudicated incompetent, all of the following information:
 {¶ 26} "(a) The nature of the threat;
 {¶ 27} "(b) The identity of the mental health client or patient making the threat;
 {¶ 28} "(c) The identity of each potential victim of the threat."
 {¶ 29} In the case at bar, in its April 10, 2003 judgment entry, the trial court stated the following: "[t]he [c]ourt finds the Beech Brook motion well taken. Beech Brook is a mental health organization as described at R.C. 2305.51(A)(1)(c) and is immune from liability in this case pursuant to R.C. 2305.51(B). [Appellants'] argument that there is a difference between negligent `administration of treatment foster care' and negligent `rendering of mental health care and treatment' is rejected." We agree.
 {¶ 30} According to Beech Brook's manual of "Policies and Procedures," the policy of Beech Brook states that it "is a multi-service, multi-site facility for the treatment of emotionally disturbed children and families, while providing adoption and foster care services for children 0 to 21 years of age." With respect to staffing, Beech Brook's manual provides that "[t]he program currently has the capacity to serve 182 children. There are slots for 18 case managers (12 master's level and six bachelor's level), giving an approximate ratio of 1:10." Regarding supervision, the manual indicates that "[s]upervision of the case managers is provided by three coordinators. The coordinators are all master's level, L.I.S.W. or L.P.C.C., staff." In addition, the manual discusses therapy and states that "[t]here are seven to eight therapists who provide the majority of the individual, family, and specialized therapy services to foster care clients, as well as the master's level case managers. The average educational level of the therapists is a master's degree and five years of clinical experience, and many are skilled at a variety of different specialty areas." With respect to medical care, the manual indicates that:
 {¶ 31} "[m]edical care is provided to children through arrangements made with local practitioners by the Beech Brook psychiatrist, case managers, foster families, and [CCDCFS].
 {¶ 32} "In addition to the base treatment foster care service, Beech Brook makes available a full range of psychiatric services, including evaluation, case consultation, and medication management."
 {¶ 33} Based on the foregoing, R.C. 2305.51 is applicable here. Because Beech Brook is "an organization that engages one or more mental health professionals to provide mental health services to one or more mental health clients or patients," it is a "mental health organization" based on R.C. 2305.51(A)(1)(c). Pursuant to R.C. 2305.51 (A)(1)(d) and (e), Beech Brook has a qualified licensed staff of mental health professionals who provide specialized therapy and psychiatric services to clients as well as medical care through arrangements made with local practitioners.
 {¶ 34} As a mental health organization, Beech Brook is immune from liability pursuant to R.C. 2305.51(B). Based on the record, there is no evidence of any discussions with Beech Brook mental health professionals that Moorer intended to shoot appellant Rachael Cogswell or Kovacic. The facts presented do not establish that Beech Brook had any reason to believe that Moorer had both the intent and ability to carry out an explicit threat of inflicting imminent and serious physical harm or death against appellant Rachael Cogswell or Kovacic. Appellants fail to show that the serious physical harm or death resulted from Beech Brook's failure to "predict, warn of, or take precautions to provide protection from the violent behavior" of Moorer. R.C.2305.51(B). Thus, appellants' first assignment of error is without merit.
 {¶ 35} In their second assignment of error, appellants contend that the trial court erred by granting Beech Brook's motion for summary judgment. Appellants allege that they presented evidentiary materials, specifically the expert report of Bruce Maag ("Maag"), which establish genuine issues of material fact regarding the negligent administration of Beech Brook's treatment foster care program, separate and apart from any mental health care services.
 {¶ 36} In order for a summary judgment to be granted, the moving party must prove: "* * * (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." Mootispawv. Eckstein (1996), 76 Ohio St.3d 383, 385.
 {¶ 37} The Supreme Court stated in Dresher v. Burt (1996),75 Ohio St.3d 280, 296, that: "* * * the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the recordwhich demonstrate the absence of a genuine issue of fact on amaterial element of the nonmoving party's claim. The `portions of the record' to which we refer are those evidentiary materials listed in Civ.R. 56(C), such as the pleadings, depositions, answers to interrogatories, etc., that have been filed in the case. * * *" (Emphasis sic.)
 {¶ 38} If the moving party satisfies this burden, then the nonmoving party has the burden pursuant to Civ.R. 56(E) to provide evidence demonstrating a genuine issue of material fact. If the nonmoving party does not satisfy this burden, then summary judgment is appropriate. Civ.R. 56(E). Appellate courts review a trial court's granting of summary judgment de novo. Brown v.Scioto Cty. Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711. TheBrown court stated that "we review the judgment independently and without deference to the trial court's determination." Id. An appellate court must evaluate the record "in a light most favorable to the nonmoving party." Link v. Leadworks Corp.
(1992), 79 Ohio App.3d 735, 741. Furthermore, a motion for summary judgment must be overruled if reasonable minds could find for the party opposing the motion. Id.
 {¶ 39} In the instant matter, the trial court stated in its judgment entry that: "* * * [appellants'] evidentiary materials in response to Beech Brook's motion for summary judgment fail to establish a genuine issue for trial of a case of negligence against Beech Brook because (1) there is no duty owed [appellants] by Beech Brook under the facts and (2) there is no proximate connection between any conduct of Beech Brook and [Moorer's] shooting of [appellant] Rachael Cogswell or [Kovacic.]" We agree.
 {¶ 40} We must note again that on November 25, 2002, appellants filed a motion to amend their February 14, 2002 complaint. Appellants' proposed amended complaint asserted claims for negligence arising out of the administration of Beech Brook's treatment foster care program. In addition, the expert report of Maag, in which he opined various areas where Beech Brook was negligent, focused upon the negligent administration of Beech Brook's treatment foster care program. Again, on April 10, 2003, the trial court denied appellants' motion to amend their complaint. Appellants' February 14, 2002 complaint does not contain a claim for negligent administration of treatment foster care. Thus, appellants' complaint does not contain the claim upon which appellants base error.
 {¶ 41} As previously addressed in appellants' first assignment of error, the "administration" of Beech Brook's treatment foster care is part of the "mental health service" as defined by R.C. 2305.51. As such, appellants' attempt to define Beech Brook's acts as "administering" rather than "rendering" Moorer's treatment foster care does not circumvent the broad grant of immunity granted by R.C. 2305.51.
 {¶ 42} In any event, appellants have not established the elements of a negligence claim. "To prevail on a claim for negligence the plaintiff must prove the following elements: (1) the existence of a duty owed by the defendant to the plaintiff, (2) the breach of duty, (3) causation, and (4) damages." ErieIns. Co. v. Cortright, 11th Dist. No. 2002-A-0101, 2003-Ohio-6690, at ¶ 12. Appellants fail to establish that Beech Brook had a duty to administer Moorer's treatment plan for their benefit rather than the benefit of Moorer. We agree with Beech Brook that because it renders professional services in its capacity as a foster care and mental health care organization, that does not translate to a general legal duty to the public at large. In addition, appellants fail to show that the alleged failure to properly administer the treatment foster care is causally or proximately related to the injuries sustained by them. Based on Mootispaw, supra, it was proper for the trial court to conclude that summary judgment was appropriate. Thus, appellants' second assignment of error is without merit.
 {¶ 43} In their third assignment of error, appellants allege that the trial court erred by granting the Elstons' as well as Beech Brook's motions for summary judgment, since the evidentiary materials presented established genuine issues of material fact with respect to the existence of a special relation between a foster care agency, foster parents, and the foster child which imposed a legal duty upon the Elstons and Beech Brook to control the conduct of Moorer. Appellants stress that proximate cause of harm for any breach of such duty presented a jury issue as did the issues of foreseeability and intervening cause.
 {¶ 44} R.C. 3109.09(A) defines "parent" to mean one of the following:
 {¶ 45} "(1) Both parents unless division (A)(2) or (3) of this section applies;
 {¶ 46} "(2) The parent designated the residential parent and legal custodian pursuant to an order issued under section 3109.04
of the Revised Code that is not a shared parenting order;
 {¶ 47} "(3) The custodial parent of a child born out of wedlock with respect to whom no custody order has been issued."
 {¶ 48} Neither a county children services board nor a foster parent appointed and certified by a county children services board pursuant to R.C. 5153.16 and accompanying regulations is a "parent" under R.C. 3109.09 or 3109.10. Accordingly, neither the board nor a foster parent is liable under R.C. 3109.09 or 3109.10
for the willful damage to or theft of property, or for the willful or malicious assault of a person, committed by a child in their custody. 1987 Ohio Atty.Gen.Ops. No. 87-082.
 {¶ 49} With respect to being liable for the conduct of a third person, the Supreme Court of Ohio held that: "[g]enerally, a defendant has no duty to control the violent conduct of a third person as to prevent that person from causing physical harm to another unless a `special relation' exists between the defendant and the third person or between the defendant and the other. In order for a special relation to exist between the defendant and the third person, the defendant must have the ability to control the third person's conduct." Estates of Morgan v. FairfieldFamily Counseling Ctr. (1997), 77 Ohio St.3d 284, paragraph one of the syllabus.
 {¶ 50} In the case sub judice, appellants' contention that the trial court erred in granting summary judgment on a "special relation" claim was not asserted in their complaint, but rather in their motion to amend their complaint, which was denied by the trial court. Appellants concede that there is no case law in Ohio that directly recognizes a special relation or legal duty imposed upon foster care organizations or foster parents for the action of a child.
 {¶ 51} The trial court stated the following in its judgment entry: "[t]he [c]ourt finds the Elstons [sic] motion [for summary judgment] well taken. The Civ.R. 56(C) evidentiary materials of [appellants] in response to the motion [do] not provide specific facts showing the existence of any genuine issue for trial. Negligence in this case requires (1) a duty from [the] Elstons to [appellants], (2) breach of that duty, and (3) an injury proximately caused by that breach. The facts demonstrate that there was no breach of duty to the public generally, let alone [appellants] specifically. Even if there had been a breach, reasonable minds could only conclude that the shooting of [appellant] Rachael Cogswell and/or [Kovacic] was not proximately caused by such breach. It was not foreseeable that [Moorer] would steal a gun, hold up a gas station, and shoot an attendant and/or a customer, even if he was negligently permitted to go out to celebrate his birthday." We agree.
 {¶ 52} With respect to Beech Brook, appellants fail to show any evidence that Beech Brook had the ability to control Moorer's conduct as he had not been a resident of Beech Brook since 1998. As such, pursuant to Morgan, supra, no special relation existed when the incident occurred. Thus, Beech Brook owed no duty to appellants. Again, the fact that Beech Brook renders professional services does not translate to a duty to the public at large.
 {¶ 53} With regard to the Elstons, they are not "parents" pursuant to R.C. 3109.09. Therefore, they are not liable for the willful conduct committed by Moorer. Even assuming arguendo that the Elstons are the equivalent of natural parents, there is no evidence that the Elstons owed a duty to appellants or that they failed to exercise reasonable control over Moorer when they knew or should have known that injury to another was a probable consequence. See Midwestern Indemn. Co. v. Wiser (2001),144 Ohio App.3d 354, 358. Moorer's actions were not foreseeable. Based on Mootispaw, supra, it was proper for the trial court to conclude that summary judgment was appropriate. Appellants' third assignment of error is without merit.
 {¶ 54} For the foregoing reasons, appellants' assignments of error are not welltaken. The judgment of the Geauga County Court of Common Pleas is affirmed.
Christley, J., O'Neill, J., concur.
[1] The foregoing complaint was previously voluntarily dismissed pursuant to Civ.R. 41(A)(1) on January 10, 2002, and was re-filed by appellants.
[2] Beech Brook is a mental health organization which works in conjunction with Cuyahoga County Department of Children and Family Services ("CCDCFS") to provide various services including the following: (1) residential services to children who have identified severe, emotional, and behavioral disturbances; (2) traditional foster care services for children who display minimal to moderate behavioral problems; and (3) other specialized foster care to those that exhibit moderate to serious emotional and behavioral difficulties.
[3] Moorer indicated that he previously stole a loaded gun from a store, hid it inside his closet in a pocket of a coat that he never wore, and gave it to Pearson a few days before February 18, 2000.
[4] Moorer is currently incarcerated for aggravated murder, aggravated attempted murder, and robbery.