BROWN, Appellant, et al.,

v.

COUNTY COMMISSIONERS OF SCIOTO COUNTY, Appellees.[1]

[Cite as Brown v. Scioto Cty. Bd. of Commrs. (1993), 87 Ohio App.3d 704.]

Court of Appeals of Ohio,
Scioto County.

No. 92CA2052.

Decided May 18, 1993.

---

1. The original complaint named the county commissioners as defendants and sought damages against them both individually and in their representative capacities. However, the case ultimately proceeded on appellant's third amended complaint, which merely listed the "County Commissioners of Scioto County" as defendants without naming them individually.

706

*Richard F. Swope,* for appellant.

*Lynn Alan Grimshaw,* Scioto County Prosecuting Attorney, and *Mark A. Leventhal,* Assistant Prosecuting Attorney, for appellees.

HARSHA, Presiding Judge.

Jack D. Brown and Barbara Brown filed a complaint which alleged that the Scioto County Commissioners had failed to properly maintain and operate a sewage treatment plant and thereby created a nuisance and trespass to the Browns' neighboring property. After the trial court granted the commissioners' motion for summary judgment, Barbara Brown took this appeal.[2]

Appellant assigns the following error:

"The trial court erred in granting defendant-appellees' motion for summary judgment[.]"

In 1983, the Browns filed a complaint seeking damages and injunctive relief against appellees and Sewer District No. Four. The Browns subsequently filed a third amended complaint naming appellees, the state of Ohio, Department of Rehabilitation and Correction, and the superintendent of the Southern Ohio Correctional Facility ("SOCF") as defendants. Their third amended complaint alleged that the defendants had created a nuisance and trespassed on their property by negligently and/or willfully and wantonly constructing, operating, and maintaining a sewage treatment plant in the immediate vicinity of the Browns' real property. As a result of the defendants' tortious conduct, noxious gases and odors were emitted from the plant which settled on and diminished the value of the Browns' and their neighbors' property, created health hazards, denied them the use and enjoyment of their property, and caused extreme emotional and "intestinal" distress. The Browns sought injunctive relief against "each defendant" and compensatory and punitive damages against appellees in the total amount of $500,000.

---

2. Although it appears that Mr. Swope represented both Browns below and that his brief is entitled "Brief of Plaintiffs–Appellants," the April 20, 1992 notice of appeal indicates that only Barbara Brown is appealing the summary judgment. Accordingly, the portion of the summary judgment relating to Jack D. Brown is affirmed.

Appellees' answer to the amended complaint denied the majority of its allegations and stated that appellees neither owned nor operated the sewage treatment plant as of that date. The remaining defendants were dismissed pursuant to Civ.R. 12(B)(1) because the claims against them were required to be initially filed in the Court of Claims. The Browns subsequently filed a complaint against, SOCF in the Court of Claims and, following a full trial, that court entered judgment in favor of SOCF. *Brown v. S. Ohio Corr. Facility* (1991), 62 Ohio Misc.2d 337, 598 N.E.2d 909.

Appellees filed a motion for summary judgment based upon the following grounds: (1) Jack D. Brown lacked standing; (2) there was no government "taking"; (3) there was no trespass; (4) the nuisance claim was not actionable; (5) the entire action was barred by the statute of limitations; and (6) the issuance of injunctive relief was not warranted. The Browns filed a memorandum contra appellees' summary judgment motion. Since we make an independent determination of the appropriateness of the summary judgment, a review of the evidence properly submitted on the motion follows.

In 1968, appellees and the state entered into an agreement in which the county would construct a waste water treatment facility upon land owned by the state near Lucasville, Ohio. The sewage treatment plant was intended to treat waste water from SOCF and subsequently processed additional sewage from a vocational school and approximately one hundred houses. In 1969, the state leased the land to appellees to operate and maintain the sewage treatment plant for fifteen years.

For the sum of $50,000, the Browns purchased a house located approximately one-quarter of a mile from the sewage treatment plant. They moved into the house on March 12, 1978. Prior to moving into the house, they did not perceive any odor from the plant. However, within the first week after they moved in, they noticed some odor coming from the plant. The odor was not very noticeable the first few years, but became worse and more frequent during the early 1980s. The odor was particularly bad when the weather was hot and humid or when the wind was blowing in a particular direction. The worst period for the noxious odors emanating from the sewage treatment plant was the summer of 1983, when there was an odor comparable to having their septic tank cleaned. The extreme odor during that period lasted twenty-four hours every day and prompted the Browns to file their initial complaint. Additionally, the odors from the plant increased the number of insects of all kinds on the Browns' property, requiring them to call an exterminating company two or three times a month during one period of time. The Browns became nauseated due to the odors, and in 1984, a physician indicated that it was a "probability" that appellant's stomach problems,

including loss of appetite, were related to the treatment plant odors. The odors made it uncomfortable and, at times, impossible to be outside their house.

According to Jack D. Brown, the sewage treatment plant emitted germs and bacteria that rotted the ears off two rabbits that the Browns owned. Although unsure of the exact date, the Browns had their home listed for sale at $65,000 and a woman interested in purchasing it was driven away by the plant odors. Although the Browns and several neighbors complained to appellees, as well as state and federal officials, no action was taken by appellees to remedy the problems associated with their operation and maintenance of the sewage treatment plant.

Appellees operated the sewage treatment plant from its inception under a lease with the state. The lease was extended for a few brief periods until it was determined that the state could more efficiently operate the plant. Accordingly, appellees relinquished operation and maintenance of the plant to the state on June 1, 1985. During appellees' period of operation of the plant, the condition of the plant was deplorable. The Ohio Environmental Protection Agency cited the plant for violations concerning the level of bacteria and suspended solids contained in the effluent discharged into an adjacent stream. Most of the equipment was old and worn out. A comminutor, which was utilized to break down the raw sewage, had not been operable for several months, and the screen used to filter the sewage through the treatment process had a large hole in it. One of the two oxidation ditches was idle and the other ditch was only operating at twenty-five to fifty percent of its capacity. The idle oxidation ditch had become septic, breeding anaerobic bacteria that emitted the gaseous substance causing the noxious odors.

When appellees operated the sewage treatment facility, they rarely stocked an inventory of spare parts for the plant machinery. Consequently, there were occasions when an old part malfunctioned and the plant would be shut down until a new part was back-ordered. The plant shut-downs caused untreated sewage to remain idle and contributed to the noxious odors.

In March 1988, the Browns obtained a dissolution. Jack D. Brown transferred his interest in the house and real property to appellant, but continued to reside in the house until 1990. On February 21, 1991, a realtor appraised the property owned by appellant as having a value of $50,000 as of that date. The real estate appraiser further opined that the property "would be worth $75,000 if the waste disposal plant odor was not present as an adverse condition."

The court of common pleas, after having reviewed the evidentiary material filed in support and in opposition to appellees' motion for summary judgment, entered summary judgment in favor of appellees, expressly determining there was no just cause for delay.

Appellant's sole assignment of error asserts that the trial court erred in granting appellees' motion for summary judgment.

In reviewing a summary judgment, the lower court and the appellate court utilize the same standard, *i.e.*, we review the judgment independently and without deference to the trial court's determination. *Midwest Specialties, Inc. v. Firestone Co.* (1988), 42 Ohio App.3d 6, 8, 536 N.E.2d 411, 413. Summary judgment is appropriate when the following have been established: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in its favor. *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881, 883; cf., also, *State ex rel. Coulverson v. Ohio Adult Parole Auth.* (1991), 62 Ohio St.3d 12, 14, 577 N.E.2d 352, 353–354; Civ.R. 56(C). The burden of showing that no genuine issue exists as to any material fact falls upon the moving party in requesting summary judgment. *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801. Additionally, a motion for summary judgment forces the nonmoving party to produce evidence on any issue for which that party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus.

The lower court did not specify which of appellees' several grounds raised in their motion for summary judgment it found to be meritorious. Accordingly, we must review each of the arguments raised by appellees in order to determine if summary judgment was properly entered. Appellees initially contended that Jack D. Brown lacked standing in the action because he conveyed his interest in the subject property to appellant in 1988. Since Jack D. Brown did not file a notice of appeal, we need not review the propriety of this contention.

Appellees next contended that the Browns' complaint failed to state a claim for relief based on inverse condemnation. Although the Browns contended that appellees' actions constituted a "temporary taking of property justifying mandamus" in a memorandum contra the motion for summary judgment, their third amended complaint never sought mandamus relief to compel appellees to commence an appropriation action. The issue was initially raised by appellees in an apparent attempt to defeat the Browns' nuisance claims. Since the Browns' claims for relief based on nuisance and trespass did not require a "taking" as a prerequisite to recovery, appellees could not have been granted summary judgment on this basis.

Appellees next contended that the Browns had failed to introduce evidence which would preclude summary judgment on their nuisance and trespass claims.

We will initially consider appellant's claim for relief based upon nuisance. Appellees asserted that there was no genuine issue of material fact as to the existence of either an absolute nuisance, a qualified nuisance, a public nuisance, or a private nuisance.

As stated by Professor Keeton in Prosser & Keeton, The Law of Torts (5 Ed.1984) 616, Section 86: "There is perhaps no more impenetrable jungle in the entire law than that which surrounds the word 'nuisance.'" Nuisance describes two separate fields of tort liability that through the accident of historical development are called by the same name. See Restatement of the Law 2d, Torts (1979) 84, Introductory Note. One of these two fields of liability bears the name of public nuisance and covers the invasion of public rights, *i.e.*, rights common to all members of the public. Historically, public nuisance was criminal in nature and recovery in damages is limited to those who can show particular harm of a kind different from that suffered by the general public. *Id.*

The other field of liability is called private nuisance. This tort covers the invasion of the private interest in the use and enjoyment of land. As such, plaintiff's action must always be founded upon her interest in the land. *Id.* However, numerous Ohio decisions do not appear to follow the Restatement limitation on restricting injury to property rights. See, *e.g., Williamson v. Pavlovich* (1989), 45 Ohio St.3d 179, 181, 543 N.E.2d 1242, 1245; *Cardington v. Fredericks* (1889), 46 Ohio St. 442, 446, 21 N.E. 766, 767; *O'Neil v. Atwell* (1991), 73 Ohio App.3d 631, 635, 598 N.E.2d 110, 112; *Blevins v. Sorrell* (1990), 68 Ohio App.3d 665, 669, 589 N.E.2d 438, 440.

Restatement of the Law 2d, Torts (1979) 87, Section 821B, defines public nuisance as an unreasonable interference with a right common to the general public. Conduct does not become a public nuisance merely because it interferes with a large number of people. At common law, there must be some interference with a public right which is common to all members of the general public. In addition to common-law public nuisance, Ohio has adopted statutes and administrative regulations which define certain conduct as being a public nuisance. These statutes amount to a legislative declaration that the proscribed conduct is an unreasonable interference with a public right.

Restatement of the Law 2d, Torts (1979) 100, Section 821D, defines private nuisance as a nontrespassory invasion of another's interest in the private use and enjoyment of land. Section 822 of Restatement of the Law 2d, Torts provides that in order to be actionable, the invasion must be either (a) intentional and unreasonable, or (b) unintentional and caused by negligent, reckless or abnormally dangerous conduct (negligent and reckless conduct carry with them a degree of unreasonableness; abnormally dangerous activity is not treated in the same

sense, but the balancing effort necessary to determine liability has the same effect). *Id.* at 113–115.

■ While the law in Ohio is far from clear in this area, absolute nuisance and nuisance *per se* seem to be the same. The essence of these two characterizations of nuisance is that no matter how careful one is, such activities are inherently injurious and cannot be conducted without damaging someone else's property or rights. See *Metzger v. Pennsylvania, Ohio & Detroit RR. Co.* (1946), 146 Ohio St. 406, 32 O.O. 450, 66 N.E.2d 203, paragraph one of the syllabus; *Curtis v. Ohio State Univ.* (1986), 29 Ohio App.3d 297, 301, 29 OBR 363, 366–367, 504 N.E.2d 1222, 1226; *Blair v. Ohio Dept. of Rehab. & Corr.* (1989), 61 Ohio Misc.2d 649, 658, 582 N.E.2d 673, 678. They are based upon either intentional conduct or abnormally dangerous conditions, and as such the rule of absolute liability applies. *Jennings Buick, Inc. v. Cincinnati* (1978), 56 Ohio St.2d 459, 465, 10 O.O.3d 545, 549, 384 N.E.2d 303, 307. A modern example would be a neighborhood "crack house."

■ Conversely, qualified nuisance is premised upon negligence. It consists of a lawful act that is so negligently or carelessly done as to have created an unreasonable risk of harm which in due course results in injury to another. *Metzger, supra,* at paragraph two of the syllabus; *State ex rel. Schoener v. Hamilton Cty. Bd. of Commrs.* (1992), 84 Ohio App.3d 794, 619 N.E.2d 2. Obviously, both public and private nuisances may be either absolute or qualified.

Having reviewed the appropriate law, we look first to see if appellant has presented sufficient evidence to allow her complaint to proceed in the area of either common law or statutory public nuisance. (As there has been no Civ.R. 12[B][6] motion filed and appellees' memorandum in support of its motion for summary judgment addresses public nuisance, we assume without deciding that the appellant's first cause of action states a claim for public nuisance.)

■ In this case, appellant introduced no evidence that appellees were not licensed to operate the sewage disposal plant. See *Wing, supra.* Since a pollution control facility operates under the sanction of law, it cannot be a common-law public nuisance. See *Allen Freight Lines, Inc. v. Consol. Rail Corp.* (1992), 64 Ohio St.3d 274, 277, 595 N.E.2d 855, 857; *Mingo Junction v. Sheline* (1935), 130 Ohio St. 34, 30 O.O. 78, 196 N.E. 897, paragraph three of the syllabus. This is but another way of saying that although it would be a nuisance at common law, conduct which is fully authorized by statute or administrative regulation is not an actionable tort. This is especially true where a comprehensive set of legislative acts or administrative regulations governing the details of a particular kind of conduct exist. See Restatement of the Law, Torts, *supra,* Section 821B, Comment *f,* and *Schoener, supra.*

In any event, Ohio Adm.Code 3745–15–07(A) states:

"Except as provided in paragraph (B) of this rule, the emission or escape into the open air from any source or sources whatsoever, of smoke, ashes, dust, dirt, grime, acids, fumes, gases, vapors, odors, or any other substances or combinations of substances, in such manner or in such amounts as to endanger the health, safety or welfare of the public, or cause unreasonable injury or damage to property, is hereby found and declared to be a public nuisance. It shall be unlawful for any person to cause, permit or maintain any such public nuisance."

■ Appellees did not argue below nor do they argue on appeal that subsection (A) is not applicable because of subsection (B). Accordingly, there remains a genuine issue of material fact as to whether their conduct constituted a public nuisance pursuant to Ohio Adm.Code 3745–15–07(A). In this regard, the evidence indicated that appellees maintained the plant in "deplorable" condition, with numerous Ohio EPA violations.[3]

■ A public nuisance as such does not afford a basis for recovery of damages in tort unless there is particular harm to the plaintiff that is of a different kind than that suffered by the public in general. See Restatement of the Law 2d, Torts (1979) 94, Section 821C(1). When the particular harm involved consists of interference with the use and enjoyment of land, the landowner may recover either on the basis of the particular harm to her resulting from the public nuisance or on the basis of private nuisance. See Restatement of the Law 2d, Torts (1979) 93, Section 821B, Comment h. Here appellant contends that she lost an opportunity to sell her property and was unable to use and enjoy it. This is a sufficiently distinct or particular harm from the public right so as to allow recovery under a statutory public nuisance theory.

■ However, just as the appellees' sewage disposal plant cannot be a common-law public nuisance because of the governmental authorization to operate, it likewise cannot be an absolute statutory nuisance. In *Schoener, supra,* the First District Court of Appeals held that a regulated solid waste disposal facility could not be subject to liability as an absolute nuisance. In order for a duly licensed and regulated sanitary landfill to be found liable for maintaining a nuisance, negligence must be established, *i.e.,* a qualified nuisance. The *Schoener* court based its holding upon the following rationale:

---

3. It is generally the function of the trier of fact to determine whether a nuisance exists. See 58 American Jurisprudence 2d (1989) 855, Section 249. Because summary judgment is a procedural device to terminate litigation, it must be awarded with caution, and doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 359, 604 N.E.2d 138, 140.

"A standard of strict liability is not appropriate under these circumstances, where the public policy of Ohio has clearly chosen to allow operators such as Rumpke to do business in this state subject to the limitations imposed under what can only be termed a comprehensive and vigilant regulatory scheme. Once an operator becomes licensed by the state, we think it fair to say in law that part of the quid pro quo for the submission to such exacting regulatory oversight is the operator's insulation from liability under a theory of strict liability. Therefore, we conclude that the trial court did not err when it declined to instruct the jury concerning absolute nuisance."

As stated above, appellant introduced no evidence that appellees were not licensed to operate the sewage disposal plant. See *Wing, supra.* Consequently, pursuant to *Schoener,* she failed to raise a genuine issue of material fact as to the presence of absolute public nuisance, but may proceed on the theory of qualified statutory nuisance.

 We turn now to the cause of action for private nuisance. First, we note that *Schoener* is equally applicable to public and private nuisance claims. Accordingly, appellant did not present sufficient evidence to withstand a motion for summary judgment on the issue of absolute private nuisance.

 A civil action based upon the maintenance of a qualified private nuisance is essentially an action in tort for the negligent maintenance of a condition, which, of itself, creates an unreasonable risk of harm, ultimately resulting in injury. *Allen Freight Lines, Inc. v. Consol. Rail Corp.* (1992), 64 Ohio St.3d 274, 275, 595 N.E.2d 855, 856. In such a case, negligence must be alleged and proven to warrant a recovery. *Id.* at 276, 595 N.E.2d at 856, citing *Taylor v. Cincinnati* (1944), 143 Ohio St. 426, 441, 28 O.O. 369, 375, 55 N.E.2d 724, 731.

 Appellees contend that there was no evidence of a qualified nuisance since there was no indication that appellant suffered any injury during the period when appellees operated the plant. We note that appellant's appraisal of her property value was made over five years after appellees relinquished operation of the plant and, thus, was too remote to establish injury at that time. However, there was evidence that a prospective purchaser was lost due to the offensive odors from the plant. There was also evidence that appellant suffered nausea and was unable to fully use her property. To entitle adjoining property owners to recover damages for the maintenance of a nuisance, it is not necessary that they should be driven from their dwellings, or that the defendants' acts create a positive unhealthy condition; it is enough that their enjoyment of life and property is rendered uncomfortable, for in some circumstances discomfort and annoyance may constitute a nuisance. See, generally, 61 American Jurispru-

dence 2d (1981) 950, Pollution Control, Section 531. Accordingly, there remains a genuine issue of material fact as to whether appellees' conduct constituted a qualified private nuisance.

Appellees also contend that *McKee v. Akron* (1964), 176 Ohio St. 282, 27 O.O.2d 197, 199 N.E.2d 592, requires affirmance. However, as noted by appellant, *McKee* was limited to sovereign immunity considerations, and was subsequently overruled by the Supreme Court of Ohio in *Haverlack v. Portage Homes, Inc.* (1982), 2 Ohio St.3d 26, 2 OBR 572, 442 N.E.2d 749, paragraph two of the syllabus (defense of sovereign immunity is not available, in the absence of a statute providing immunity, to a municipal corporation in an action for damages alleged to be caused by the negligent operation of a sewage treatment plant); see, also, *Lancione v. Dublin* (Sept. 29, 1992), Franklin App. No. 92AP–244, unreported, 1992 WL 249828, applying R.C. 2744.02(B)(2). Additionally, construing the evidence most strongly in appellant's favor, we are persuaded that her evidence of loss of at least one prospective purchaser, increase in insects necessitating extermination expenses, nausea, and inability to use her property fully constituted sufficient evidence to raise a genuine issue of material fact as to whether appellees' interference with her property was substantial and unreasonable. See *Bower v. Weisman* (S.D.N.Y.1986), 639 F.Supp. 532 (substantial interference requirement is to satisfy the need for a showing that the land is reduced in value because of the defendant's conduct); Prosser & Keeton, The Law of Torts (5 Ed.1984) 623, 627, Sections 87–88. Accordingly, a genuine issue of material fact remains on the question of qualified private nuisance.

Appellees further claim that there was no showing of trespass. The essential elements necessary to state a cause of action in trespass are: (1) an unauthorized intentional act, and (2) entry upon land in the possession of another. See, *e.g., Blashinsky v. Topazio* (Apr. 17, 1987), Lake App. No. 11–113, unreported, 1987 WL 9942. Traditionally, an invasion of the exclusive possession of land by intangible substances, such as an airborne pollutant, was usually held by the courts not to constitute a trespass since a trespass involved a physical invasion by tangible matters. See Annotation, Recovery in Trespass for Injury to Land Caused by Airborne Pollutants (1980), 2 A.L.R. 4th 1054. However, there has been a growing trend among jurisdictions to hold that the test for whether an invasion of a property interest is a trespass does not depend upon whether the intruding agent is an intangible or tangible substance, but whether the intrusion interferes with the right to the exclusive possession of property. *Id.* at 1055. However, odors emanating from a facility, see *Born v. Exxon Corp.* (Ala.1980), 388 So.2d 933, or mere diminution of value, see *Maddy v. Vulcan Materials Co.* (D.Kan.1990), 737 F.Supp. 1528, are insufficient to state a trespass claim even under the modern view.

The Supreme Court of Alabama in *Born* cited its previous decision in *Borland v. Sanders Lead Co., Inc.* (Ala.1979), 369 So.2d 523, 530, to note the following distinction between trespass under the modern trend and nuisance at 388 So.2d at 934:

"For an indirect invasion to amount to an actionable trespass, there must be an interference with plaintiff's exclusive possessory interest; that is, through the defendant's intentional conduct, and with reasonable foreseeability, some substance has entered upon the land itself, affecting its nature and character, and causing substantial actual damage to the res. For example, if the smoke or polluting substance emitting from a defendant's operation causes discomfort and annoyance to the plaintiff in his use and enjoyment of the property, then the plaintiff's remedy is for nuisance; but if, as a result of the defendant's operation, the polluting substance is deposited upon the plaintiff's property, thus interfering with his exclusive possessory interest by causing substantial damage to the res, then the plaintiff may seek his remedy in trespass, though his alternative remedy in nuisance may co-exist."

There is no summary judgment evidence of the polluting substance, *i.e.*, noxious odors, depositing particulate matter on appellant's real property or causing physical damage to it. We are persuaded that under either the traditional or modern views, since appellant has failed to adduce summary judgment evidence of physical damage to her real property, appellees were entitled to summary judgment on appellant's trespass claim.[4]

Appellees next contended below that summary judgment was warranted on appellant's nuisance and trespass claims by virtue of the statute of limitations. R.C. 2305.09 provides:

"An action for any of the following causes shall be brought within four years after the cause thereof accrued:

"(A) For trespassing upon real property;

"(B) For the recovery of personal property, or for taking or detaining it;

"(C) For relief on the ground of fraud;

"(D) For an injury to the rights of the plaintiff not arising on contract nor enumerated in sections 2305.10 to 2305.12, inclusive, 2305.14 and 1304.29 of the Revised Code."

---

4. Jack D. Brown did testify to "germs" from the plant causing the ears of his pet rabbits to fall off. However, this statement does not satisfy the requirements of Civ.R. 56(E) and was therefore not properly in evidence. Further, although there was no objection to the foregoing testimony, appellant does not rely upon such testimony on appeal to claim a genuine issue of material fact concerning trespass to her chattel.

Appellant testified in her deposition that she first noticed the odors shortly after moving into the house in 1978. The county argues that R.C. 2305.09 precluded appellant from recovering on her nuisance and trespass claims since her original complaint was filed in 1983, *i.e.*, more than four years after she first noticed the noxious odors.[5]

It has long been the policy of the law to require that actions involving allegations of tortious conduct be asserted promptly. *Lawyer's Coop. Publishing Co. v. Muething* (1992), 65 Ohio St.3d 273, 280, 603 N.E.2d 969, 974. Where a nuisance in the form of air pollution is permanent in that the structure giving rise to the pollution is of a permanent nature, pollution is consistently produced and is not practicably abatable, the statute of limitations begins to run at the time that the nuisance begins or is first noticed, provided that the permanent nature of the nuisance can be ascertained at that time. Annotation, When Statute of Limitations Begins to Run as to Cause of Action for Nuisance Based on Air Pollution (1983), 19 A.L.R.4th 456, 459–460, Section 2[a]; *Louisville Brick & Tile Co. v. Calmelat* (1917), 6 Ohio App. 435. Conversely, where an air pollution nuisance is temporary or recurrent in that the pollution is not a constant consequence of the operation or is abatable by reasonable means, a nuisance action can be brought for damages for those injuries incurred within the applicable period, regardless of when the nuisance began. Annotation, *supra*, at 460, Section 2[a].

Here, there is evidence which, when construed most strongly in appellant's favor, indicates that the nuisance was not permanent. For example, there was testimony that when the state took over, the nuisance was abated to the extent that noxious odors were no longer prevalent. Moreover, there was evidence that the odors did not substantially interfere with the property until 1983. Jack D. Brown testified that he did not notice the odors until 1981 or 1982. Accordingly, there remained a genuine issue of material fact as to whether the nuisance was continuing in nature, thereby preventing R.C. 2305.09 from barring appellant's claim.

Appellees' final contention below was that appellant was not entitled to injunctive relief. We agree. Since appellees no longer operate and maintain the sewage treatment plant, they cannot be enjoined regarding the plant's operation and maintenance. See R.C. 2727.02 regarding causes for injunctive relief.

Appellant's assignment of error is sustained in part and overruled in part. Accordingly, the summary judgment entered by the common pleas court is

---

5. Although the affirmative defense of statute of limitations was not raised by appellees in their answer, appellant did not object to this defense being raised in the Civ.R. 56(C) motion. See *Blevins, supra,* 68 Ohio App.3d at 671, 589 N.E.2d at 441–442.

affirmed as to appellant's claims of absolute nuisance, common-law public nuisance, trespass to real property, and injunctive relief, and is reversed and remanded for further proceedings consistent with this opinion as to appellant's claims of qualified private nuisance and qualified public nuisance pursuant to Ohio Adm.Code 3745–15–07(A).[6]

*Judgment affirmed in part,*
*reversed in part,*
*and cause remanded.*

PETER B. ABELE and STEPHENSON, JJ., concur.

---

6. To the extent that appellees contend on appeal that "much of the reasoning and legal precedent used by the Court of Claims" in its decision supports summary judgment, we note that the Court of Claims rendered judgment in favor of SOCF only after a full trial and upon different facts and law.