OPINION
{¶ 1} Plaintiffs-appellants Amie and Michael McCrobie appeal the October 17, 2005 Judgment Entry of the Stark County Court of Common Pleas granting summary judgment in favor of defendants-appellees Stark State College of Technology and Alice F. Cain.
 STATEMENT OF THE FACTS AND CASE {¶ 2} In the summer of 1997, appellant Amie McCrobie enrolled in classes at appellee Stark State College of Technology (hereinafter "College"). In March of 2000, she was conditionally accepted into the Physical Therapist Assistant Technology Program (hereinafter "PTAT Program"). Appellee Michael McCrobie is Amie McCrobie's husband.
 {¶ 3} The student handbook for the PTAT Program provides, "Any required course in which a student fails to earn at least a "C" must be repeated and passed prior to graduation." The handbook states, "All prerequisites of the PTAT courses must be taken and passed with a grade of "C" or better to progress in the program. The handbook further provides:
 {¶ 4} "Any student who chooses to drop a course before completing it may request in writing to be reinstated into the program the following year. A student will only be given one chance to retake that course. If the student earns less than a "C" grade, or withdraws from the class, when he/she repeats the course or subsequently fails a second class in the PTA curriculum, he/she is dismissed from the program and cannot apply for re-admittance."
 {¶ 5} Appellant received a "D" grade in one program course, retook the course and earned a "C" grade.
 {¶ 6} The PTAT Program curriculum includes "Directed Practice" courses, in which a student is assigned to a health care facility under the supervision of an employee of the facility who acts as a clinical instructor. The Directed Practice Handbook states:
 {¶ 7} "The program expects to see acceptable progress toward entry level performance in all 20 of the criteria in the PTA CPI throughout the entire Directed Practice continuum, with the student achieving an acceptable entry level performance range in all 20 criteria by the end of Directed Practice III."
 {¶ 8} The term "CPI" refers to a Clinical Performance Instrument, used to evaluate the student's performance during a Directed Practice course.
 {¶ 9} As part of her Directed Practice III course, appellant was assigned to the Bridgepark Rehabilitation Center in Akron, Ohio. Her clinical instructor was Judee Balash. Balash completed a CPI for appellant, and discussed the same with her on two separate occasions. Balash provided the evaluation to appellee Alice Cain, the Academic Coordinator of Clinical Education, whose responsibilities included assigning a grade for the course work. The evaluation provided by Balash to Cain indicated appellant should receive a failing/non-passing grade, which Cain assigned.
 {¶ 10} Appellant pursued the grade appeal procedure of appellee College, and indicated she desired a hearing before the Student-Faculty Grade Appeal Committee. The Committee concluded there was no just reason for changing the grade received. On May 7, 2004, the Vice-President for Instructional and Corporate Services notified appellant the grade would stand as submitted by Cain.
 {¶ 11} Appellants initiated this action against appellees alleging age discrimination, breach of contract, fraud and violation of her due process rights. On September 6, 2005, appellees filed a motion for summary judgment. Appellants filed their memorandum in opposition on September 15, 2005. Appellees replied on September 29, 2005. Via Judgment Entry of October 17, 2005, the trial court granted summary judgment in favor of appellees. Appellants now appeal from that entry, assigning as error:
 {¶ 12} "I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT."
 {¶ 13} Our standard of review is de novo, and as an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court. Smiddy v. The WeddingParty, Inc. (1987), 30 Ohio St.3d 35, 506 N.E.2d 212. Accordingly, an appellate court must independently review the record to determine if summary judgment was appropriate and need not defer to the trial court's decision. See Brown v. Scioto Bd.of Commrs. (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153;Morehead v. Conley (1991), 75 Ohio App.3d 409, 411-12,599 N.E.2d 786.
 {¶ 14} Civ.R. 56(C) provides, in relevant part, as follows:
 {¶ 15} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."
 {¶ 16} Thus, a trial court may not grant a motion for summary judgment unless the evidence before the court demonstrates that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. See, e.g., Vahila v. Hall (1997),77 Ohio St.3d 421, 429-30, 674 N.E.2d 1164.
 I {¶ 17} In the first assignment of error, appellants assert the trial court erred in granting appellees' motion for summary judgment as to appellants' claim of age discrimination claiming there was sufficient evidence before the trial court to create a genuine issue of material fact.
 {¶ 18} As did the trial court in this matter, we will presume for the purposes of our review the law recognizes a viable cause of action for age discrimination.[1]
 {¶ 19} In support of their age discrimination argument, appellants cite Alice Cain's inquiring as to appellant Amie McCrobie's age. Specifically, appellants allege Cain visited Bridgepark Rehabilitation Center, and spoke with Amie McCrobie. After appellant made a statement to Cain to the effect she (McCrobie) was too old to start over again, Cain inquired as to appellant's age. At deposition, appellant Amie McCrobie testified:
 {¶ 20} "Q. Now, you also state that you believe that all this happened, meaning you did not pass that course, and as a result you did not get your degree, and as a result you were not able to sit for the licensing test by the state, because of your age or perceived age; is that correct?
 {¶ 21} Mr. Traub: Objection.
 {¶ 22} "A. I believe that was the only thing that she had against me.
 {¶ 23} "Q. Why do you believe that?
 {¶ 24} "A. Why? Because it was obvious, not to me, but to other people, that I was singled out. The light bulb went on whenever she had come right out and asked me how old I was.
 {¶ 25} "Q. Now, that happened once, is that correct?
 {¶ 26} "A. Yeah, but there was no need for that.
 {¶ 27} "Q. Well —
 {¶ 28} "A. I didn't ask her how old she was.
 {¶ 29} "Q. But that happened once, and what, was that during a class? What was the circumstance of that happening?
 {¶ 30} "A. No, that was during — that was during — when she came on that four days before my clinical was ending, whenever she was telling me that I just wasn't going to make it through. And that's whenever she asked me how old I was.
 {¶ 31} "Q. Were there any other statements made by her that would lead you to believe that your age somehow influenced her?
 {¶ 32} "A. At that time?
 {¶ 33} "Q. Any time.
 {¶ 34} "A. She didn't come right out and say it, but there was definitely — definitely — it was out there where other people could read her that there was something between us, where it was one sided, because I didn't treat her that way.
 {¶ 35} "Q. Well, I know you testified earlier that she picked on you or other people said it looked like she was picking on you, but was she picking on you because of your age?
 {¶ 36} Mr. Traub: Objection.
 {¶ 37} "A. You'd have to ask her that.
 {¶ 38} "Q. But I'm asking you.
 {¶ 39} "A. I don't feel I can answer that, because —
 {¶ 40} "Q. Because you don't know, do you?
 {¶ 41} "A. No. No. I mean, because, you know, I'm not going to sit here and lie to you. You know, I'm assuming that that's it, because what else. I never did anything to provoke her. You know, and then it all clicked whenever she asked me how old I was. There was no need for that."
 {¶ 42} Tr. at 77-79.
 {¶ 43} Alice Cain also testified at deposition concerning the alleged incident:
 {¶ 44} "Q. At any time ever with your experience, your relationship with Amie McCrobie, did you ever ask her how old she was?
 {¶ 45} "A. Yes.
 {¶ 46} "Q. How many times did you ask her how old she was?
 {¶ 47} "A. Once.
 {¶ 48} "Q. When?
 {¶ 49} "A. During the conversation, and I don't know if it was at the clinical site or if it was subsequent to that, because as you said, maybe, you know, it's been a couple of years, but it was when I was offering her the associate, or telling her that she could talk to Mr. Hoffer regarding the associate of technical studies degree, and she started going on about being too old to — what could she do with that degree. It wouldn't allow her to be a physical therapist assistant, and she said she was too old to be starting again as a student, or she didn't — it was along that line. And it was at that point that, I consider her a peer of mine, being about the same age, and I asked her that, to then say to her, Well, I had just started a new degree, and I had just started a new career, and there were more opportunities to have an associates degree than to have a high school diploma. I was using it as a means to connect with her as being in the same age category.
 {¶ 50} "Q. After that exchange took place with Amie McCrobie, did she appear to be insulted; did she communicate to you in any way that she was insulted or offended by that?
 {¶ 51} "A. No.
 {¶ 52} "Q. It was your understanding that she accepted what you said in the manner in which you intended it?
 {¶ 53} "A. I have no understanding of what she heard.
 {¶ 54} "Q. Well, you're the one that said it.
 {¶ 55} "A. Right.
 {¶ 56} "Q. She was the one that was sitting across from you when it was said.
 {¶ 57} "A. She was physically upset about the whole thing, because at this point she understood that she was not going to get the degree that she had worked for and she was visibly emotionally distraught, but not — I did not assume it had anything to do with me asking her age, because she was talking about being too old to be doing things, and I thought we must be about the same age and I don't consider myself too old to be doing anything that I want to do.
 {¶ 58} "Q. I don't either. My question, though, is when you said that to Amie McCrobie, I understand she was already upset based upon what you're telling me?
 {¶ 59} "A. Yes.
 {¶ 60} "Q. Did her demeanor change; I mean was there any significant point when you said that that things changed, the wheels fell off?
 {¶ 61} "A. I did not perceive that.
 {¶ 62} "Q. Everything just kind of went the same; she was emotional anyway?
 {¶ 63} "A. Yes.
 {¶ 64} "Q. Okay. And she was emotional because you had communicated to her that she's not going to make it, she's not going to pass Directed Practice III?
 {¶ 65} "A. Yes.
 {¶ 66} "Q. When you told her that, did you have the completed CPI from Judee Balash?
 {¶ 67} "A. I believe that, as I'm thinking about this, that I did have that at that point, that it was a meeting afterwards, after Directed Practice III was completed."
 {¶ 68} Tr. at 55-57.
 {¶ 69} In support of Cain's testimony, Judee Balash testified at deposition:
 {¶ 70} "Q. Is there anything about your evaluation of Ms. McCrobie that you believe was not in line towards progressing towards the entry level performance?
 {¶ 71} "A. Yes.
 {¶ 72} "Q. Okay. And what was that?
 {¶ 73} "A. The stair climbing.
 {¶ 74} "Q. Okay. When you gave her her final performance on that analog scale, was it your intention that she was receiving a passing grade from you on this or not receiving a passing grade from you on this?
 {¶ 75} "A. She was not entry level.
 {¶ 76} "Q. Okay.
 {¶ 77} "A. That was my job in this category, is if she was entry level or not.
 {¶ 78} "Q. Okay. Did you indicate to Ms. McCrobie that she was not entry level?
 {¶ 79} "A. When we went over to the — we went over the final evaluation and then we spoke regarding the comments.
 {¶ 80} "Q. Okay.
 {¶ 81} "A. And where I thought she would be.
 {¶ 82} "Q. When you had that conversation with her about the comments, did you indicate to her that it was your belief and your grade essentially that she was not entry level —
 {¶ 83} "A. Yes, this was."
 {¶ 84} * * *
 {¶ 85} "Q. Okay. Did you receive any input from Alice Cain as far as where Ms. McCrobie would end up on this evaluation?
 {¶ 86} "A. No.
 {¶ 87} "Q. Turn to page two on this. On the analog scale there is the midterm mark as well as the final mark?
 {¶ 88} "A. Yes.
 {¶ 89} "Q. Where, using your own evaluation of that, does Ms. McCrobie fall as far as her final?
 {¶ 90} "A. The final about 65 to 70 percent.
 {¶ 91} "Q. Okay. Take a second to read you comments on that as well, please.
 {¶ 92} "A. Okay.
 {¶ 93} "Q. As far as the final evaluation, was it your indication that Ms. McCrobie had progressed towards the acceptable range of entry level performance?
 {¶ 94} "A. She did not meet entry level.
 {¶ 95} "Q. And did you indicate to Ms. McCrobie that she did not meet entry level?
 {¶ 96} "A. Yes. During the evaluation.
 {¶ 97} "Q. Okay. And this would have been the final evaluation?
 {¶ 98} "A. Yes.
 {¶ 99} * * *
 {¶ 100} "Q. Do you remember having a conversation with Ms. McCrobie where you indicated to her that Alice Cain had asked you or implied that you grade Ms. McCrobie differently?
 {¶ 101} "A. No.
 {¶ 102} "Q. Okay. Did Ms. Cain ever indicate to you that you should treat Ms. McCrobie differently in any way?
 {¶ 103} "A. No."
 {¶ 104} * * *
 {¶ 105} "Q. Okay. Do you remember telling Ms. McCrobie that — if I asked you this already, I apologize in advance, but do you have any recollection of you telling Ms. McCrobie that Ms. Cain said to grade her harder?
 {¶ 106} "A. No. No. That I know for a fact.
 {¶ 107} "Q. I'm sorry?
 {¶ 108} "A. That I know for a fact.
 {¶ 109} "Q. It didn't happen?
 {¶ 110} "A. Correct.
 {¶ 111} "Q. Okay. Did Ms. Cain influence you in any way on how you graded Ms. McCrobie?
 {¶ 112} "A. No."
 {¶ 113} * * *
 {¶ 114} "A. Okay.
 {¶ 115} "Q. Have you ever had a conversation with Ms. Cain where Ms. Cain indicates some concern of Ms. McCrobie's age?
 {¶ 116} "A. No.
 {¶ 117} "Q. Okay. Have you had a conversation with anybody on behalf of Stark State that raised an issue concerning Ms. McCrobie's age?
 {¶ 118} "A. No."
 {¶ 119} Tr. at 22-23; 24; 29; 40; 46.
 {¶ 120} Viewing the evidence in a light most favorable to appellants, there are no genuine issues of material fact as to the statement being made after appellant Amie McCrobie received her failing grade. The subject of appellant's age only arose after appellant herself mentioned she was too old to start something new. Furthermore, the testimony of Judee Balash constitutes independent, sufficient evidence demonstrating reasonable minds can reach but one conclusion, adverse to appellants.
 {¶ 121} The first assignment of error is overruled.
 II, III {¶ 122} Appellants' second and third assignments of error raise common and interrelated issues; therefore, we will address the arguments together.
 {¶ 123} Appellants assert the trial court erred in granting appellees' motion for summary judgment as to appellants' breach of contract and fraud claims
 {¶ 124} Specifically, appellants assert a contractual relationship existed between appellants and appellees based upon the payment of tuition and fees and enrollment, which appellees breached. Specifically, appellants cite the College's guidelines indicating they will not discriminate against students on the basis of age.
 {¶ 125} Appellants further cite the "promise" contained in the student handbook in which appellee College promises not to discriminate on the basis of, among other things, age. Appellants maintain they relied upon the misrepresentation to their detriment, and their reliance was both reasonable and foreseeable.
 {¶ 126} Based upon our disposition of appellants' first assignment of error, we overrule both the second and third assignments of error.
 IV {¶ 127} In the final assignment of error, appellants assert the trial court erred in granting appellees summary judgment as to appellants' claim of violation of due process.
 {¶ 128} Appellants maintain the College failed to adhere to its own internal grade appeal procedures. The College's Policy and Procedures Manual sets forth the grade appeal procedure. Specifically, appellants cite the final stage of the appeal before the Student Faculty Grade Appeal Committee, with the final decision to be made by the Vice-President for Instructional Corporate Services. Appellants note inconsistencies with other documents setting forth the procedure which indicate the Student Faculty Appeal Committee is to make the final decision. Appellants assert it is unclear who appoints the committee, with one document indicating the Vice President of Instruction and Corporate Service, and another indicating the Vice President for Instruction and Student Services. Appellant concludes the inconsistencies with the grade appeal procedure are examples of genuine issues of material fact, which require a jury to resolve.
 {¶ 129} In response, appellees argue a reviewing court is not to disturb a genuinely academic decision unless "it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." Regents of theUniversity of Michigan v. Ewing (1985), 474 U.S. 214. The United States Supreme Court has stated the standard of review is not merely whether the court would have decided the matter differently, but whether the faculty action was "arbitrary and capricious." Bd. Of Curators of Univ. of Mo. V. Horowitz
(1978), 435 U.S. 78.
 {¶ 130} Appellant Amie McCrobie acknowledges she was provided a grade review by the school. The record cited by appellants fails to demonstrate a substantial or material difference between the grade review procedure specified in the manual and that actually provided to her. We find the trial court properly granted College summary judgment on appellants' due process claim.
 {¶ 131} Appellants' fourth assignment of error is overruled.
 {¶ 132} The October 17, 2005 Judgment Entry of the Stark County Court of Common Pleas is affirmed.
Hoffman, J. Wise, P.J. and Edwards, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellants.
[1] Our presumption of a viable cause of action for age discrimination in this matter should not be interpreted as a definitive ruling by this Court on this issue.