DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas brought by plaintiffs-appellants, Julia Bates, the Lucas County Prosecutor; the Lucas County Board of Commissioners; Paul S. Goldberg, the Law Director for the city of Oregon; and the city of Oregon. Defendants-appellees are (1) GSC Principals, a Delaware Corporation and a number of corporations, including IU North America, associated with GSC Principals ("GSC"); (2) Envirosafe Services of Ohio, Inc. ("ESOI"), the Ohio corporation that operates the Envirosafe hazardous waste disposal facility located in the city of Oregon, Lucas County, Ohio; (3) Douglas Roberts, president of ESOI; (4) Stephen J. Delussa, an employee of Envirosafe Technologies, Inc., one of the corporations associated with GSC; (5) Fairlane Management Corporation ("Fairlane"), an intermediary corporation created by GSC; and (6) two corporate officers of Fairlane.
 {¶ 2} In July 2001, GSC acquired ESOI's parent company and created the structure for the management of Envirosafe. GSC owns one hundred percent of the stock in Fairlane, which, in turn, owns one hundred percent of the stock in IU North America, Inc. IU North America, Inc. owns one hundred percent of the stock in Environmental Technologies, Inc., which owns one hundred percent of the stock in ESOI. At the time GSC acquired its parent company, Envirosafe was operating under a 1991 permit issued by the Ohio Environmental Protection Agency. The Director of the Ohio Environmental Protection Agency granted a renewal of ESOI's permit to operate Envirosafe on December 29, 2005, shortly after appellants filed their complaint in this cause. *Page 3 
 {¶ 3} Pursuant to R.C. 3734.42 and Ohio Adm. Code 109:6-1-02(A), ESOI, as the prospective owner/operator of Envirosafe, was required to disclose certain information to the Ohio Attorney General's Office 180 days before the change of ownership. The statute and rule also require the prospective owner or operator, its key employees, its officers, and related parties to submit certain forms containing personal information, such as social security numbers, 180 days prior to the proposed change in ownership. See R.C. 3734.42 and Ohio Adm. Code 109:6-1-02(F). It is undisputed that ESOI failed to timely disclose any of the foregoing information.
 {¶ 4} It is also undisputed that in 2002-2003, ESOI failed to reveal, as required to be reported annually by R.C. 3734.42(D) and (F) and Ohio Adm. Code 109:6-1-02, the fact that Envirosafe was made a subsidiary of and allegedly "managed" by Fairlane. Moreover, according to a "change over of ownership" investigative report filed by the Attorney General of Ohio in 2003, ESOI provided contradictory and confusing information concerning the "parent entity or entities" of Envirosafe. This failure to provide the appropriate information was purportedly a violation of R.C. 3734.11(D), which prohibits false material statements or representations to the Attorney General, and R.C. 3734.42(B), which imposes a duty to disclose, to assist, and to cooperate in any inquiry or investigation conducted by the Attorney General.
 {¶ 5} On April 29, 2005, the Attorney General granted a limited waiver of the background disclosure requirements to ESOI, as allowed under Ohio Adm. Code 109:6-1-05(A). The waiver was limited to the years 2004 and 2005 and was also limited to *Page 4 
background investigations of the officers, directors and/or shareholders of the corporate entities that own Fairlane, that is, GSC, but did not apply to Fairlane itself or to ESOI.
 {¶ 6} On September 15, 2005, the Director of the Ohio Environmental Protection Agency, pursuant to R.C. 3734.05(I) and Ohio Adm. Code 3745:50-51(D), granted ESOI's request for a vertical enlargement of Cell M, Envirosafe's current active hazardous waste landfill. The city of Oregon appealed both the limited waiver of the disclosure requirements found in R.C. 3734.42 and Ohio Adm. Code 109:6-1-02, as well as the grant of the request for a permit modification allowing a vertical enlargement of Cell M to the Environmental Review Appeals Commission ("ERAC") pursuant to R.C. 3745.04.
 {¶ 7} On October 5, 2004, appellants filed suit against appellees demanding preliminary and permanent injunctive relief. Appellants' demand for relief was premised upon alleged violations of R.C. Chapter 3734 and any related sections of the Ohio Administrative Code. Pursuant to these provisions, appellant contended ESOI committed the disclosure and permitting violations. On November 30, 2005, appellees filed, pursuant to Civ.R. 12(B)(1), motions to dismiss appellants' complaint for lack of subject matter jurisdiction. They asserted that ERAC had original and exclusive jurisdiction over all final decisions, including permitting decisions involving landfills, of the Director of the Ohio Environmental Protection Agency. The Attorney General of the state of Ohio subsequently filed an amicus brief that supported appellees' assertions. *Page 5 
 {¶ 8} On October 6, 2006, the trial court entered a judgment in which it found that it lacked subject matter jurisdiction over the waiver of disclosure requirements related to the issuance of the modified permit for Cell M. The court also held that "as the [ERAC] has exclusive jurisdiction over matters related to Chapter 3745, this court will not make a determination as to those matters either." The lower court further decided that appellants might have a cause of action for alleged violations of R.C. Chapter 3734, but that the complaint was too "vague and ambiguous" for it to make a decision as to whether these allegations might constitute said violations. Therefore, the trial judge granted appellants 30 days to file an amended complaint that stated with "specificity and particularity those provisions alleged to be violations of Chapter 3734."
 {¶ 9} Appellants' amended complaint sets forth a claim for injunctive relief based upon the violations of those statutes in Chapter 3734 and the Ohio Administrative Code as set forth above. Additionally, the amended complaint alleges: (1) violations involving permit transfer requirements under R.C. 3734.02, 3734.05, and Ohio Adm. Code3745-50-52(C); (2) violations for the submission of false information under R.C. 3734.05(G), Ohio Adm. Code 3745-50-58, Ohio Adm. Code3745-50-42, and Ohio Adm. Code 3745-50-43; (3) liner construction violations under Ohio Adm. Code 3745-50-58(L) and appellees' 1991 and 2005 permits; (4) violations of waste strength testing (physical stability of the waste, load bearing strength, and optimum landfill placement) under R.C. 3734.05(G), Ohio Adm. Code 3745-54-73, and the 1991 permit; (5) violations of R.C. 3734.05(G), Ohio Adm. Code 3745-54-73, and the 1991 permit by disposing of untested *Page 6 
wastes below grade; (6) violations of R.C. 3734.05(G), Ohio Adm. Code3745-54-73 and the 1991 permit by failing to perform daily chemical stabilization tests; (7) a violation of Ohio Adm. Code 3745-54-73(B)(2) by failing to record the location of each hazardous waste in the Envirosafe landfill on a map or diagram of each cell or disposal area; (8) a violation of Ohio Adm. Code 3745-50-58(L)(4), (5), (6) and (10) by failing to report ESOI's noncompliance with the conditions applicable to its permit to the Director of the Ohio Environmental Protection Agency; and (11) violations of R.C. 3734.05(G), Ohio Adm. Code 3745-54-73, Ohio Adm. Code 3745-50-58, and Ohio Adm. Code 3745-50-42. Appellants' amended complaint also incorporates a list of alleged violations submitted and certified by "Envirosafe" to the Ohio Attorney General. It also incorporates letters sent to "Envirosafe" by the Ohio Environmental Protection Agency citing deficiencies that are either violations or "threatened violations of the permit, rules and code" that allegedly occurred in 2005 and 2006.
 {¶ 10} The GSC appellees and ESOI separately filed renewed motions to dismiss appellants' complaint for lack of subject matter jurisdiction. The GSC appellees asserted that appellants failed to set forth any claims pertinent to GSC. Specifically, GSC argued that the alleged violations made by appellants were not applicable to the GSC appellees because they had no ownership interest in Envirosafe. They also claimed that ERAC has exclusive original jurisdiction over the appeal of administrative decisions made by the Director of the Ohio Environmental Protection Agency. Citing Ohio Adm. Code 109:6-1-05, the GSC appellees further argued that the Ohio Attorney General has the authority to *Page 7 
waive disclosure requirements when an applicant establishes substantial hardship and that compliance is not likely to reveal any information relative to the factors set forth in R.C. 3734.44 and/or 3734.45.
 {¶ 11} In its motion to dismiss based upon lack of subject matter jurisdiction, ESOI first observed that the Director of the Ohio Environmental Protection Agency renewed Envirosafe's hazardous waste permit on December 2005, shortly after appellants commenced the present action, and that appellants appealed that renewal to ERAC. ESOI contended that the September 15, 2005 permit modification approval decision and the December 2005 permit renewal were all permitting decisions in which the director determined that "Envirosafe was in compliance with all applicable requirements [set forth in R.C. Chapter 3734 and the pertinent provisions of the Ohio Administrative Code]." Noting that ERAC has exclusive, original jurisdiction over appeals of the director's decisions concerning hazardous waste permits, ESOI maintained that the purported "violations" of the various statutes in R.C. Chapter 3734 and the relevant sections of the Ohio Administrative Code set forth in appellants' amended complaint were actually an impermissible collateral attack on the director's permitting determinations.
 {¶ 12} On May 7, 2007, the common pleas court entered a judgment granting appellees' motions to dismiss appellants' injunctive action for lack of subject matter jurisdiction. The court determined that the "violations" raised by appellants were actually issues that were subjects of final action by the Ohio Attorney General and the Director of *Page 8 
the Ohio EPA. Thus, the trial court dismissed appellants' amended complaint. Appellants appeal that judgment and set forth the following assignment of error:
 {¶ 13} THE TRIAL COURT ERRED [sic] DECIDING THAT IT LACKED SUBJECT MATTER JURISDICTION TO HEAR APPELLANTS [sic] CLAIMS OF ENVIRONMENTAL VIOLATIONS IN CONTRAVENTION OF THE EXPRESS LANGUAGE OF OHIO REVISED CODE 3734.10 AND DISMISSING THE COUNTY'S AND THE CITY'S ACTION."
 {¶ 14} In their sole assignment of error, appellants contend that R.C.3734.10 unambiguously grants subject matter jurisdiction to the court below to hear and enjoin the "violations" set forth in their amended complaint. For the following reasons, however, we must disagree with appellants.
 {¶ 15} Civ.R. 12(B)(1) permits the dismissal of a case when a trial court lacks jurisdiction over the subject matter of the litigation.Washington Mut. Bank v. Beatley, 10th Dist. No. 06AP-1189,2008-Ohio-1679, ¶ 8. The standard of review for a dismissal pursuant to Civ.R. 12(B)(1) is whether any cause of action cognizable by the forum has been raised in the complaint. State ex rel. Bush v. Spurlock (1989),42 Ohio St.3d 77, 80. An appellate court's review of a Civ.R. 12(B)(1) motion to dismiss is de novo, and, therefore, it must review the issues independently of the trial court's decision. Crestmont ClevelandPartnership v. Ohio Dept. of Health (2000), 139 Ohio App.3d 928, 936. A court is not restricted to the allegations in a complaint when determining its subject matter jurisdiction under Civ.R. 12(B)(1), and it may, therefore, consider relevant *Page 9 
materials without converting the motion into one for summary judgment.Southgate Dev. Corp. v. Columbia Gas Transmission Corp. (1976),48 Ohio St.2d 211, paragraph one of the syllabus.
 {¶ 16} R.C. 3734.10 provides, in material part:
 {¶ 17} "The attorney general or the prosecuting attorney of the county, city director of law, or village solicitor where a violation has occurred, is occurring, or may occur, * * * the legislative authority of a political subdivision in which a violation has occurred, is occurring, or may occur, or the director of environmental protection, shall criminally prosecute to termination or bring an action for injunction against any person who has violated, is violating, or is threatening to violate any section of this chapter, rules adopted under this chapter, or terms or conditions of permits, licenses, variances, or orders issued under this chapter. * * *. The court of common pleas in which an action for injunction is filed has the jurisdiction to and shall grant preliminary and permanent injunctive relief upon a showing that the person against whom the action is brought has violated, is violating, or is threatening to violate any section of this chapter, rules adopted thereunder, or terms or conditions of permits, licenses, variances, or orders issued under this chapter. The court shall give precedence to such an action over all other cases. * * *. This chapter does not abridge rights of action or remedies in equity, under common law, or as provided by statute or prevent the state or any municipal corporation or person in the exercise of their rights in equity, under common law, or as provided by statute to suppress nuisances or to abate or prevent pollution." *Page 10 
 {¶ 18} While R.C. 3734.10 grants political subdivisions the broad right to seek an injunction when a solid or hazardous waste disposal facility violates the conditions or term of a permit, any provision of R.C. Chapter 3734, and related administrative rules, that right exists only in the "narrow areas of nuisance and pollution prevention and abatement." Atwater Twp. Trustees v. B.F.I. Willowcreek Landfill (1993),67 Ohio St.3d 293, 296. The conduct of a hazardous waste facility that is, however, fully authorized by statute or administrative regulation does not constitute an actionable tort, e.g., a nuisance. Brown v.Scioto Cty. Bd. of Commrs. (1993), 87 Ohio App.3d 704, 713. This is particularly true in those instances "where a comprehensive set of legislative acts or administrative regulations governing a particular kind of conduct exist." Id. (Citations omitted.)
 {¶ 19} In the present case, a comprehensive set of legislative acts and administrative regulations governing the conduct of solid and hazard waste facilities exists. R.C. 3734.05(D)(1) grants the Director of the Ohio Environmental Protection Agency the authority to deny or approve an application for a permit for a hazardous waste facility. The director must review the application and any accompanying information to determine whether the application complies with agency rules and the requirements of R.C. 3734.05(D)(2)[1] . After making this initial determination, the director is required to issue either an intent to deny the permit or enter a draft permit and *Page 11 
notify the public of the application and his intention in order to allow public comment. Id. If public interest is significant, the director must schedule a public hearing in a place located where the facility is to be located. Id. No later than 180 days after the public comment period, the director is required to issue or deny the permit. R.C. 3734.05(D)(3). No public subdivision of the state of Ohio is allowed to require any other zoning or other approval for the construction or operation of a hazardous waste facility. Id.
 {¶ 20} Likewise, when an existing hazardous waste facility seeks a permit renewal a similar procedure must be followed. See R.C.3734.05(H)(1), (H)(2) and (H)(3). Of great relevance to the case before us is R.C. 3734.05(H)(1), which provides that when reviewing an application for the renewal of a hazardous waste facility's permit, the director must base his decision upon: "* * * the application andaccompanying information, inspection reports of the facility, results ofperformance tests, a report regarding the facility's compliance ornoncompliance with the terms and conditions of the permit and[administrative] rules adopted by the director under this chapter, andsuch other information as is relevant to the operation of thefacility." (Emphasis added.) In addition, when any request for a modification is submitted to the director, he or she must approve or disapprove an application for modification in accordance with R.C.3734.05(D)(2). R.C. 3734.05(I) (3).
 {¶ 21} Under R.C. 3745.04, any political subdivision, among others, may appeal "* * * the issuance, modification, or revocation of a license, permit, variance, or certificate to the approval or disapproval of plans and specifications" to ERAC. Indeed, *Page 12 
appellants have admittedly appealed both the modification of Envirosafe's permit and the renewal of that permit to that administrative body. In conclusion, our review of the issues raised by appellants in conjunction with the law set forth above leads us to believe that all of appellants' complaints concerning appellees' purported "violations," which have necessarily been reviewed by the director in determining whether to allow the modification of Enviro safe's permit and the renewal of its permit, and the decision of the Ohio Attorney General, are before the appropriate legal forum. In other words, the "violations" raised by appellants do not fall within that narrow class of acts that are actionable in a court of common pleas. Accordingly, the trial court did not err in finding that it lacked subject matter jurisdiction over appellants' claims, and appellants' sole assignment of error is found not well-taken.
 {¶ 22} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Peter M. Handwork, J., Mark L. Pietrykowski, P.J., Thomas J. Osowik, J., CONCUR.
[1] R.C. 3734.05(D)(2) contains a number of factors to be considered and found by the director, e.g. the nature and volume of the waste to be stored at the facility. *Page 1