JOURNAL ENTRY AND OPINION
{¶ 1} This cause came to be heard upon the accelerated calendar pursuant to App.R. 11.1 and Loc.R. 11.1, the trial court records and briefs of counsel.
 {¶ 2} Plaintiff-appellant, Ruth Embury, appeals the decision of the trial court. Having reviewed the arguments of the parties and the pertinent law, we hereby affirm the lower court.
 {¶ 3} This case concerns the failure of a retaining wall. The facts in this case involve the same set of circumstances as a prior action between the parties. The previous action was filed in Cuyahoga County Case No. 421775, and alleged breach of contract, OCSPA violations, and fraud. The first case was fully litigated with the jury rendering an adverse judgment against appellee. Thereafter, the court held a hearing on attorney's fees and trebling the judgment amount. Ultimately, over $100,000 in damages and $47,000 in attorney's fees were awarded to appellant. On July 15, 2004, appellee paid appellant the full amount of the judgment and a satisfaction of judgment was filed with the court. Appellant then filed the within action; however, this time instead of alleging a breach of contract action she alleged a breach of warranty action. Appellee filed a motion for summary judgment. Appellant filed a brief in opposition, arguing that this case fit a very narrow exception to the doctrine of res judicata discussed in State ex rel. Westchester Estates, Inc. v.Bacon (1980), 61 Ohio St.2d 42. Appellee filed a reply brief, and on November 21, 2005 the trial court held a final pretrial. At the final pretrial, extensive discussions were held in the judge's chambers concerning appellee's August 4, 2005 motion for summary judgment. Thereafter, the trial court issued a two-page journal entry granting appellee's motion for summary judgment. Appellant then filed a notice of appeal bringing the case before this court.
 I. {¶ 4} Appellant's assignment of error states the following: "The trial court erred in granting appellee's motion for summary judgment when the summary judgment evidence presented genuine issues of material fact."
 II. {¶ 5} Civ.R. 56 provides that summary judgment may be granted only after the trial court determines: 1) no genuine issues as to any material fact remain to be litigated; 2) the moving party is entitled to judgment as a matter of law; and 3) it appears from the evidence that reasonable minds can come but to one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Norris v. Ohio Std. OilCo. (1982), 70 Ohio St.2d 1; Temple v. Wean United, Inc.
(1977), 50 Ohio St.2d 317.
 {¶ 6} It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. Celotex Corp. v. Catrett (1987),477 U.S. 317, 330; Mitseff v. Wheeler (1988),38 Ohio St.3d 112, 115. Doubts must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356.
 {¶ 7} In Dresher v. Burt (1996), 75 Ohio St.3d 280, the Ohio Supreme Court modified and/or clarified the summary judgment standard as applied in Wing v. Anchor Medina, Ltd. of Texas
(1991), 59 Ohio St.3d 108. Under Dresher, "the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact or material element of the nonmoving party's claim." Id. at 296. The nonmoving party has a reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293. The nonmoving party must set forth "specific facts" by the means listed in Civ.R. 56(C), showing a genuine issue for trial exists. Id.
 {¶ 8} This court reviews the lower court's granting of summary judgment de novo. Brown v. Scioto Bd. of Commrs.
(1993), 87 Ohio App.3d 704. An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ.R. 56(C). "The reviewing court evaluates the record * * * in a light most favorable to the nonmoving party * * *. [T]he motion must be overruled if reasonable minds could find for the party opposing the motion." Saunders v. McFaul (1990),71 Ohio App.3d 46, 50; Link v. Leadworks Corp. (1992), 79 Ohio App.3d 735,741.
 {¶ 9} The doctrine of res judicata involves both claim preclusion, which historically has been called estoppel by judgment, and issue preclusion, which traditionally has been referred to as collateral estoppel. Grava v. Parkman Twp.
(1995), 73 Ohio St.3d 379, 381. Under the claim preclusion branch of res judicata, "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." Id. at syllabus. See, also, Black's Law Dictionary (6th Ed. 1990) 1305 (defining res judicata as a "[r]ule that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action."). Issue preclusion, or collateral estoppel, precludes relitigation of an issue that has been "actually and necessarily litigated and determined in a prior action." Krahn v. Kinney (1989), 43 Ohio St.3d 103, 107.
 {¶ 10} In Grava, the court stated that the doctrine of res judicata bars not only subsequent actions involving the same legal theory of recovery as the previous action, but also claims which could have been litigated in the previous action:
 {¶ 11} "It has long been the law of Ohio that `an existing final judgment or decree between the parties to litigation is conclusive as to all claims which were or might have been litigated in a first lawsuit'" (quoting Rogers v. Whitehall
(1986), 25 Ohio St.3d 67, 69). Further, the court held "[t]he doctrine of res judicata requires a plaintiff to present every ground for relief in the first action, or be forever barred from asserting it." Id.; Grava at 382, quoting Natl. Amusements,Inc. v. Springdale (1990), 53 Ohio St.3d 60, 62.
 {¶ 12} In the case at bar, appellant is seeking to create a new legal claim based upon facts already litigated to judgment. It is undisputed that appellee has completed no work on the wall since the previous case.[1] There is no new set of facts to litigate. Evidence demonstrates that the facts in the case at bar are the same as the earlier action and the current claims could have been litigated in a first lawsuit.
 {¶ 13} Appellant argues that the "breakwall deteriorated due to defective labor and/or materials."[2] Appellant alleges that during the five-year guarantee period, repeated demands were made on appellee to repair the breakwall under the guarantee. However, a review of the transcript demonstrates that, contrary to appellant's assertions, appellant already litigated the warranty issue in the previous action. For example, appellant was questioned regarding the warranty and responded:
 {¶ 14} "Q. All right. Did Mr. Votruba tell you he was givingyou a five year warranty on the wall [and] would make allnecessary repairs on the wall?
 {¶ 15} A. Yes, he did.[3]
 {¶ 16} * * *
 {¶ 17} And you've also indicated in your direct testimony thatMr. Votruba gave you a warranty on the wall?
 {¶ 18} A. Yes.
 {¶ 19} That he was building?
 {¶ 20} Yes.
 {¶ 21} And that warranty was for how long?
 {¶ 22} Five years I think from the date it's finished but fiveyears.
 {¶ 23} Did you ever notify him of those blocks coming off thatwall?
 {¶ 24} No, I didn't because he walked out on theproject."[4]
 {¶ 25} Appellant alleges in her new complaint that appellee's breach of the guarantee proximately caused her to suffer damages in the past and will proximately cause damages in the foreseeable future.[5] Appellant further alleges, "[p]laintiff has been forced to contract with third parties to repair the breakwall at the cost of approximately $160,000.00 including, without limitation, the costs of plans for repairs, required governmental approvals, engineering and legal expenses in obtaining required governmental approvals and actual construction costs."[6]
However, these issues were already litigated in the previous action.
 {¶ 26} Indeed, the transcript demonstrates appellant presented expert evidence that due to the breach of contract regarding the wall, repairs would cost approximately $350,000 to $400,000.[7] The trial judge charged the jury with respect to the breach of contract claim and then went on to explain what breach of contract means and the damages that flow from a finding of breach of contract.[8] The trial judge also charged the jury with respect to an alleged breach of warranty under the fraud count.[9] Accordingly, appellant now seeks to relitigate issues which have already been ruled upon and is precluded from doing so by the doctrine of res judicata.
 {¶ 27} In addition to the problem with res judicata, we find appellant's reliance on State ex rel. Westchester Estates v.Bacon (1980), 61 Ohio St.2d 42, to be misplaced. Appellant alleges that the wall did not collapse until after her previous lawsuit, and she had no reason to believe that the wood crib retaining wall would collapse.[10] Appellant further alleges the fact of the collapse would have been material to the previous action.[11] In her brief, appellant advanced the Ohio Supreme Court decision of Westchester, which holds that:
"Where there has been a change in facts in a given actionwhich either raises a new material issue, or which would havebeen relevant to resolution of a material issue involved inearlier action, neither doctrine of res judicata nor doctrine ofcollateral estoppel will bar litigation of that issue in lateraction."
 {¶ 28} Appellant alleges that the collapse of the wall was a new fact not litigated in the previous action. However, as previously stated, there is evidence to the contrary. For example, testimony demonstrates that appellant's expert opined that the wall would "come apart like a zipper" and estimated repair costs in the "neighborhood of $350,000.00 to $400,000.00 give or take my normal ten percent error."[12] Moreover, in the first lawsuit, the trial judge noted, "let's face it, if there wasn't a fuss with the money, if the wall wasn't comingundone, you wouldn't be here on account of the shape of the wall is different."[13]
 {¶ 29} Westchester does not apply here. In Westchester,
the court was bothered by the fact that the developer had changed the plans. When the plans were originally drawn up and approved, the developer was going to develop a 43-acre tract devoted to 312 town houses. However, the developer later changed the plan significantly, to 14 acres of town houses and 28 acres of single-family residences. In other words, the changes were significant, and what was approved to be built in the first action had very little to do with what the developer was actually trying to get approved in the second action. Consequently,Westchester does not apply to the case at bar.
 {¶ 30} Accordingly, based on the evidence, we find the trial court's actions to be proper and find no error on the part of the trial court in granting appellee's motion for summary judgment.
 {¶ 31} Appellant's assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, A.J., and Corrigan, J., concur.
[1] "Defendant's last work on the breakwall occurred about March, 2000." Appellant's complaint, _13.
[2] Appellant's complaint, _14.
[3] Tr., Vol. 2, p. 306.
[4] Id. at 380, 381.
[5] Appellant's complaint, _17.
[6] Appellant's complaint, _18.
[7] Tr., Vol. 1, pp. 270-271.
[8] Tr., Vol. 4, pp. 686-689.
[9] "Specifically, Plaintiff Embury claims Defendant Votruba made the following representations to her which she alleges were false * * *. Namely, that, * * * number nine, defendant wasgiving plaintiff a five year warranty on the wall and would make all necessary repairs on the wall." Tr. at 696-97, emphasis added.
[10] Affidavit of appellant, No. 2, at 3.
[11] Affidavit of appellant, No. 2, at 6.
[12] Tr., Vol. 1, p. 270.
[13] Tr., Vol. 3, p. 633. (Emphasis added.)