[Cite as *BTS Transport, L.L.C. v. Commercial Truck & Trailer, Inc.*, 2020-Ohio-1564.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| BTS TRANSPORT, LLC, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO.  2019-T-0070** |
| COMMERCIAL TRUCK & TRAILER, INC., et al., | : | |
| | : | |
| Defendants-Appellees. | | |

Civil Appeal from the Trumbull County Court of Common Pleas.
Case No.  2019 CV 00375.

Judgment: Reversed and remanded.

*Michael D. Rossi*, Guarnieri & Secrest, PLL, 151 East Market Street, P.O. Box 4270, Warren, OH 44482 (For Plaintiff-Appellant).

*Charles Hess*, Hess Law Office, 4230 Tuller Road, Suite 100, Dublin, OH 43017 (For Defendants-Appellees).


TIMOTHY P. CANNON, P.J.

{¶1}   Appellant, BTS Transport, LLC ("BTS"), appeals from the entry of summary judgment granted in favor of appellees, Commercial Truck & Trailer, Inc. ("CT&T") and Orren Zook (collectively "Defendants").  The judgment is reversed.

{¶2}   CT&T, located in Girard, Ohio, is a repair facility for large truck trailers, buses, and off-road heavy vehicles.  Orren Zook is the owner of CT&T.  In 2014, BTS brought a 2002 or 2003 Pitts lowboy trailer to CT&T for repair.  When BTS returned to

pick up the trailer, a dispute arose over the price of the repair and the number of hours worked. CT&T submitted an invoice for $7,195.46. BTS refused to pay that amount and offered around $3,100.00. CT&T refused to release the trailer without full payment of the invoiced amount.

{¶3} More than three years later, in 2018, CT&T obtained a certificate of title for the trailer on the basis that it was an abandoned vehicle, pursuant to R.C. 4505.101. In obtaining the certificate of title, CT&T filed an Unclaimed Motor Vehicle Affidavit in which Orren Zook, as the owner of CT&T, averred that the trailer's "wholesale value" was $21,000.00; the "cost of agreed upon repairs" was $7,195.46; the "vehicle value" was $13,804.54; and the "storage fees" were $23,540.00. He signed the affidavit underneath the following provision:

> By completing this form, I am hereby affirming that ALL of the requirements of sections 4505.101 and / or 4513.601 of the R.C. have been met and I attest that all the information contained on this form is true and accurate. I understand that providing false information may constitute a criminal offense of falsification under section 2921.13 of the R.C. and is a misdemeanor of the first degree.

{¶4} After acquiring the certificate of title, CT&T sold the trailer to a third party for the sum of $8,149.60, which, according to Defendants, included $1,000.00 worth of additional work.

{¶5} On February 27, 2019, BTS sued Defendants for conversion, a R.C. 2307.60 claim[1], and unjust enrichment. BTS sought compensatory and punitive damages. BTS later withdrew its claim for unjust enrichment.

---

1. "Anyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law, may recover the costs of maintaining the civil action and attorney's fees if authorized by any provision of the Rules of Civil Procedure or another section of the Revised Code or under the common law of this state, and may recover punitive or exemplary damages if authorized by section 2315.21 or another section of the Revised Code." R.C. 2307.60(A)(1).

{¶6} Defendants answered the complaint and thereafter moved for summary judgment. Defendants argued that BTS had no standing to sue for conversion because the title history reveals BTS is not and was never the owner of the trailer, and that BTS could not succeed on its R.C. 2307.60 claim because it had not alleged a criminal act by either defendant. Defendants also asserted Orren Zook could not be held personally liable.

{¶7} In response to Defendants' motion for summary judgment, BTS argued that a genuine issue of material fact exists as to whether BTS ever held title to the trailer. BTS submitted a copy of a 2017 Certificate of Title for a "2002 Pitts Trailer," which was incorporated into the affidavit of its managing member, Paul Adamiuk.

{¶8} BTS further responded that genuine issues of fact remain as to the alleged R.C. 2307.60 violation because there was evidence that Defendants did not comply with the requirements of R.C. 4505.101 when it applied for the certificate of title. Specifically, BTS stated that the "vehicle value" of the trailer listed on Defendants' Unclaimed Motor Vehicle Affidavit was not less than the statutory threshold amount of $3,500.00 and the trailer was never left "unclaimed" by BTS, within the meaning of R.C. 4505.101. Finally, BTS asserted that Orren Zook is personally liable because he signed the false affidavit and wrongfully invoked R.C. 4505.101.

{¶9} On October 2, 2019, the trial court granted Defendants' motion and entered summary judgment in favor of Defendants on BTS's claims. The trial court held Defendants had not committed conversion because CT&T initially held a possessory lien on the trailer in the amount of the repair invoice and then took title by complying with R.C. 4505.101 before the trailer was sold. The trial court found no violation of R.C. 4505.101. The trial court further held that BTS provided no evidence of a criminal act

3

by Defendants, because the criminal act alleged was a violation of R.C. 4505.101, and therefore BTS could not succeed on its cause of action under R.C. 2307.60.

{¶10} BTS noticed a timely appeal from this entry. In its sole assignment of error, BTS contends "the trial court erred in entering summary judgment in Defendants-Appellees' favor." BTS raises two issues for review, both of which are questions of statutory interpretation and application:

> [1.] Whether, for purposes of obtaining a certificate of title for an "abandoned vehicle" under RC§4505.101, the $3,500.00 threshold value of the motor vehicle is determined by deducting the cost of repairs from the vehicle's wholesale value; or by deducting both the cost of repairs and storage fees from that wholesale value.
>
> [2.] Whether, within the meaning of RC§4505.101(A)(1), the period of time during which a given motor vehicle "has been left unclaimed for fifteen days or more" includes the period of time between completion of the requested repairs and mailing of the requested statutory notice.

### Summary Judgment Standard

{¶11} An appellate court reviews a trial court's decision to grant summary judgment under a de novo standard of review, i.e., "independently and without deference to the trial court's determination." *Brown v. Cty. Commrs. of Scioto Cty.*, 87 Ohio App.3d 704, 711 (4th Dist.1993) (citation omitted); *see also Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Issues of statutory interpretation are also questions of law, which we review de novo. *Riedel v. Consol. Rail Corp.*, 125 Ohio St.3d 358, 2010-Ohio-1926, ¶6 (citations omitted).

{¶12} "Civ.R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that

> (1) [n]o genuine issue as to any material fact remains to be litigated;
> (2) the moving party is entitled to judgment as a matter of law; and

4

> (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977); *see also Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 359 (1992) ("Doubts must be resolved in favor of the non-moving party.").

{¶13} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Civ.R. 56(C).

{¶14} "[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). "If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied." *Id.*

{¶15} If this initial burden is met, the nonmoving party then bears the reciprocal burden to set forth specific facts demonstrating there is a genuine issue for trial. *Id.*, citing Civ.R. 56(E). If the nonmovant fails to do so, summary judgment will be entered against the nonmoving party. *Id.*

5

**R.C. 4505.101 "Certificate of Title for Abandoned Vehicle"[2]**

{¶16}   R.C. 4505.101(A) provides the procedure by which a repair garage, such as CT&T, is permitted to obtain a certificate of title for an abandoned vehicle:

(1) Any repair garage or place of storage in which *a motor vehicle with a value of less than three thousand five hundred dollars has been left unclaimed for fifteen days or more following completion of the requested repair* or the agreed term of storage shall send by certified mail, return receipt requested, to the last known address of any owner and any lienholder of the motor vehicle a notice to remove the motor vehicle. * * *

(2) The repair garage or place of storage may obtain a certificate of title to the motor vehicle if all of the following apply:

(a) *The motor vehicle remains unclaimed by any owner or lienholder of the vehicle for fifteen days after the mailing of all required notices.*

(b) For each notice, the repair garage or place of storage has either received the signed receipt from the certified mail or has been notified that the delivery was not possible. * * *

(c) An agent of the repair garage or place of storage that mailed the notice executes an affidavit, in a form established by the registrar of motor vehicles by rule, affirming that all of the requirements of this section necessary to authorize the issuance of a certificate of title for the motor vehicle have been met.

*The affidavit shall set forth an itemized statement of the value of the motor vehicle*; the length of time that the motor vehicle has remained unclaimed; that a notice to remove the vehicle has been mailed to any titled owner or lienholder by certified mail, return receipt requested; and that a search of the records of the bureau of motor vehicles has been made in accordance with division (A)(1) of this section.

(Emphasis added.)

---

2. Effective March 23, 2015, the provisions of R.C. 4505.101 were significantly revised. *See* Am.Sub.S.B. No. 274, Section 1, 2014 Ohio Laws File 190. Further revisions became effective April 6, 2017, which is the version quoted herein. *See* Am.Sub.H.B. No. 341, Section 1, 2016 Ohio Laws File 165. Subsequent to the matter at hand, the statute was again amended by adding "port authority" to the notice provision found in (A)(1). *See* Am.Sub.H.B. No. 62, 2019 Ohio Laws File 2 (eff. July 3, 2019).

{¶17} As used in this section, "repair garage" means "any business with which a person entered into an agreement for the repair of a motor vehicle[.]" R.C. 4505.101(E)(1).

{¶18} If the repair garage presents an affidavit that complies with division (A), the clerk of courts shall issue a certificate of title, free and clear of all liens and encumbrances. R.C. 4505.101(C)(1)(a).

> Upon receipt of the certificate of title, a repair garage * * * shall pay to the clerk of courts the value of the motor vehicle, minus both of the following: (a) If the motor vehicle was towed by the party seeking title to the motor vehicle under this section, a towing fee; [and] (b) Storage fees for the period of time the vehicle was stored without payment. The clerk of courts shall deposit any money received under this section into the county general fund.

R.C. 4505.101(C)(3).

{¶19} "Whoever violates this section shall be fined not more than two hundred dollars, imprisoned not more than ninety days, or both." R.C. 4505.101(D).

### Unclaimed Motor Vehicle

{¶20} BTS argues the trial court erred in finding it failed to timely claim the trailer after CT&T mailed the statutory notice, under R.C. 4505.101(A)(2)(a). It is not BTS's contention that it did not receive the statutory notice. Rather, according to BTS, the (A)(2)(a) provision is not triggered unless the vehicle, under (A)(1), "has been left unclaimed for fifteen days or more following completion of the requested repair." Because BTS returned for the trailer within days of the completion of the repair, it argues the trailer was not "left unclaimed."

{¶21} The statute provides an owner of a motor vehicle with two distinct opportunities to claim its vehicle before a repair garage may obtain a certificate of title.

First, the owner has at least 15 days following completion of the requested repair.

Second, the owner has another 15 days after the mailing of all required notices:

> (1) Any repair garage or place of storage in which a motor vehicle with a value of less than three thousand five hundred dollars *has been <u>left unclaimed</u> for fifteen days or more following completion of the requested repair* or the agreed term of storage shall send by certified mail, return receipt requested, to the last known address of any owner and any lienholder of the motor vehicle a notice to remove the motor vehicle. * * *
>
> (2) The repair garage or place of storage may obtain a certificate of title to the motor vehicle if all of the following apply:
>
>> (a) *The motor vehicle <u>remains unclaimed</u> by any owner or lienholder of the vehicle for fifteen days after the mailing of all required notices.*

R.C. 4505.101(A) (emphasis added).

{¶22} These two distinct periods of time trigger what action the repair garage must take if it wishes to acquire title. After the first 15-day period, the repair garage shall send a notice to remove the vehicle. After the second 15-day period, the repair garage may apply to obtain a certificate of title. BTS does not contend that CT&T failed to follow this procedure. If BTS believed it had claimed the trailer in accordance with (A)(1), the time to assert its interest in the trailer and CT&T's alleged noncompliance with the statute was, at the very latest, within 15 days of receiving the statutory notice. There is no evidence that BTS did so. We find no support for BTS's argument that the trailer was not "left unclaimed."

{¶23} BTS's second issue presented for review is not well taken.

**Value of Motor Vehicle**

{¶24} BTS additionally argues the trial court erred in finding the trailer's value was less than $3,500.00, as required under R.C. 4505.101(A), because it subtracted the cost of repairs *and* the storage fees from the trailer's wholesale value. We agree.

{¶25} As used in R.C. 4505.101, "value" means "*the wholesale value* for that make and model of motor vehicle at the time an affidavit is submitted under division (C) of this section, as provided in a vehicle valuation guide that is generally available and recognized by the motor vehicle industry, *minus* both of the following:

> (a) The estimated cost of repairs to restore the motor vehicle to the wholesale value for that make and model of motor vehicle;
>
> (b) The cost of any agreed-upon repairs.

R.C. 4505.101(E)(3) (emphasis added).

{¶26} In the Unclaimed Motor Vehicle Affidavit, Defendants filled out the "Vehicle Value" section as follows:

**VEHICLE VALUE (must be less than $3500 to use this affidavit)**

| | | |
|---|---|---|
| **Wholesale Value** (as provided in a vehicle valuation guide recognized by the motor vehicle industry) (A) | | $ 21000.00 |
| Estimated cost of repairs to restore vehicle to wholesale value (B) | | $ |
| Cost of agreed upon repairs (C) | | $ 7195.46 |
| **VEHICLE VALUE** (A) – (B) – (C) = | | $ 13804.54 |
| Towing fees* (1) | | $ |
| Storage fees* (only for the period of time the vehicle was stored without payment) (2) | | $ 23540.00 |
| **AMOUNT PAID TO THE CLERK** VEHICLE VALUE – (1) – (2) = | | $ .00 |

{¶27} The trial court held that the value of the trailer, for purposes of R.C. 4505.101, was less than $3,500.00. In reaching this conclusion, however, the trial court incorrectly recited both the affidavit and the statute, finding as follows:

> According to Plaintiff, Defendant acquired title to the trailer without complying with the requirements of R.C. 4505.101. Specifically, Plaintiff contends that in the affidavit accompanying the application

9

to the Ohio Bureau of Motor Vehicles ("BMV"), CT&T listed the vehicle's value as $13,804.54, an amount higher than the $3,500.00 allowed by R.C. 4505.101. Plaintiff's reading of the affidavit is incomplete. The wholesale value of the vehicle was listed as $13,804.54 after deducting the cost of repairs, but CT&T was permitted to also deduct the actual expenses for storage. After that deduction, the value of the vehicle was negative, and therefore, under the statutory maximum.

{¶28} Pursuant to both the statute and the affidavit, the "value" of the vehicle is equal to the wholesale value minus (a) the estimated cost of repairs to restore the vehicle to wholesale value and (b) the cost of agreed upon repairs. *See* R.C. 4505.101(E)(3). Here, the wholesale value was listed as $21,000.00—not, as the trial court held, $13,804.54. Further, CT&T was *not* permitted to deduct the storage fees when calculating "value." Pursuant to both the statute and the affidavit, the storage fees are only to be deducted when determining the amount to be paid to the clerk. *See* R.C. 4505.101(C)(3). Here, the amount to be paid to the clerk amounts to less than zero. The trailer's "value," on the other hand, amounts to $13,804.54.

{¶29} Finally, we note that the trial court relied on *Comm. Star Credit Union v. Nickson*, 9th Dist. Lorain Nos. 07CA009075 & 07CA009112, 2007-Ohio-7036 in reaching its decision. However, the statute and the Unclaimed Motor Vehicle Affidavit have both been significantly revised since the opinion was issued in *Nickson*.

{¶30} In *Nickson*, a credit union was the holder of a note that was secured by the grantor's vehicle. The vehicle was towed from mall property July 2005. The towing company attempted to obtain a certificate of title for the vehicle August 2005. The credit union filed a replevin action October 2005. Ultimately, the trial court granted summary judgment in favor of the towing company. *Id.* at ¶1-3.

10

{¶31} On appeal, the credit union argued summary judgment was improper because a question of fact remained regarding the application of R.C. 4505.101—specifically, the towing company's affidavit indicated the vehicle was worth more than $2,500.00, which was the statutory threshold at that time. *Id.* at ¶12. The Ninth District disagreed, based on the language of the statute and affidavit in effect at the time.

{¶32} The towing company had inserted the number $5,450.00 next to a line that read, "Wholesale value of vehicle regardless of condition, as of this date." The credit union asserted this was the vehicle's "value." The Ninth District stated that, by doing so, the credit union "ignore[d] the remainder of the affidavit." *Id.* at ¶13. According to the court's opinion, directly below the "wholesale value" line on the affidavit were the following lines and corresponding values filled in by the towing company:

> Estimate cost of repairs to restore vehicle to wholesale value * * * **$5300.**
>
> Actual expenses incurred * * * **$890.00.**
>
> Total deductions * * * **$6190.**
>
> Value of vehicle, less deductions: * * * If more than $2500.00 this form cannot be used. * * * **-$740.**

Thus, the plain language of the affidavit demonstrated that the $5,450.00 figure represented the vehicle's "wholesale value," but not the "value" of the vehicle less deductions, which was the figure used to determine the applicability of R.C. 4505.101. *Id.*

{¶33} At that time, effective January 1, 2004, the "value" of a vehicle under R.C. 4505.101 was simply "determined in accordance with standards fixed by the registrar of motor vehicles." The affidavit quoted above reflects that the standard fixed by the

11

registrar at the time was the vehicle's "wholesale value" minus (a) the "estimate cost of repairs to restore vehicle to wholesale value" and (b) "actual expenses incurred."

{¶34} Citing *Nickson*, the First District subsequently held that an applicant was required to deduct "actual expenses for towing and storage" from the "wholesale value" when calculating the vehicle's "value." Again, the court was applying the 2004 version of R.C. 4505.101. *See Matthews v. Heflin*, 1st Dist. Hamilton No. C-110612, 2012-Ohio-2862, ¶17.

{¶35} Effective as of March 23, 2015, the "value" of a vehicle under R.C. 4505.101 is currently defined as the vehicle's "wholesale value" minus "(a) the estimated cost of repairs to restore the vehicle to wholesale value and (b) the cost of agreed upon repairs." R.C. 4505.101(E)(3). This is reflected in the Unclaimed Motor Vehicle Affidavit submitted by Defendants. There is no longer any mention of "actual expenses," and "storage fees" are only to be deducted when determining the amount to be paid to the clerk. R.C. 4505.101(C)(3)(b).

{¶36} Consequently, it was error for the trial court to rely on *Nickson* when holding that CT&T was permitted to deduct its "actual expenses for storage fees" when calculating the "value" of the vehicle for purposes of R.C. 4505.101(E)(3).

{¶37} The accuracy of the information contained in Defendants' Unclaimed Motor Vehicle Affidavit is not challenged. If it is accurate, it appears the clerk of courts should not have issued a certificate of title to CT&T. On its face, the Unclaimed Motor Vehicle Affidavit submitted by Defendants should not have qualified to obtain a certificate of title because the trailer's "value" was calculated as $13,804.54—more than the current statutory threshold of $3,500.00. Because the trial court's entire opinion was based on its holding to the contrary, we must remand this matter for further

12

proceedings. The trial court must be permitted to consider BTS's claims for conversion and R.C. 2307.60 violation in light of this clarification.

{¶38} BTS's first issue presented for review is well taken.

{¶39} The sole assignment of error is with merit to the extent indicated. The trial court erred in granting summary judgment in favor of Defendants for the reasons stated.

{¶40} The judgment of the Trumbull County Court of Common Pleas is reversed. This matter is remanded to the trial court for further proceedings consistent with this opinion.

CYNTHIA WESTCOTT RICE, J.,

MARY JANE TRAPP, J.,

concur.

13